*hoga Heights,* 118 Ohio St., 544, 552, 161 N. E., 920, it is stated:

"At the same time, because of its having entered the field of public utilities, there devolved upon the city of Cleveland certain duties toward the public of the territory it had undertaken to serve that were cast upon it, not by the contract, but because of the contract, among which was the duty to serve the utility to the public of the designated territory without discrimination, from the performance of which duty it could not absolve itself except by contract with the person to whom it owed the duty."

Many authorities are cited in support of that statement. The principle is incorporated in the syllabus quoted in the opinion of my associate.

The city of Cincinnati having seen fit in its proprietary capacity to assume to furnish water to some residents in Sewer District No. 1, Hamilton county, is subject to the same restrictions against discrimination as would apply to any public utility assuming a similar service.

Under such circumstances, therefore, those residents of Sewer District No. 1, who are refused a service granted to other residents, may have the benefit of a writ of mandamus, through which such discrimination may be eliminated.

MILBOURN, APPELLEE, *v.* ASKA, APPELLANT.

(No. 906—Decided July 13, 1946.)

*Messrs. Cable & Cable,* for appellee.
*Messrs. Meredith & Meredith,* for appellant.

GUERNSEY, J. This is an appeal on questions of law and fact from a judgment of the Court of Common Pleas of Allen county in a case wherein Charles M. Milbourn, the appellee herein, was plaintiff and J. C. Aska, the appellant, was a defendant, as was also one Marjorie Price who did not appeal. The case was tried *de novo* in this court.

The action was brought by plaintiff, as lessee under a written lease entered into between him and Aska as lessor, to enjoin Aska from terminating the lease and taking possession of the premises.

The material facts as disclosed by the evidence are as follows:

During the month of November and the early part of December 1944, plaintiff and Aska were engaged in negotiations with reference to the leasing from the defendant of certain premises situated in the city of Lima, Ohio, which premises are a part of Lima House Hotel property.

During the month of November 1944, an instrument

in writing was prepared setting forth the terms of the lease. That instrument purports to be dated the 23rd day of November 1944. It was typewritten but a minor change was made in writing on December 26, 1944. The minds of the parties had not fully met until that time as to the subject matter of the lease and the instrument was not fully completed, executed or delivered until December 26, 1944.

The instrument of lease, among other things, provides:

"This lease shall begin on the first day of December, 1944, and end on the 31st day of December, 1951, and this lease is subject to an original lease for said premises held by J. C. Aska, the lessor herein, from Etta Goldsmith and Sallie Nirdlinger, surviving trustees of the estate of Joseph Goldsmith, deceased. * * *

"The lessee herein covenants and agrees that he will pay to the lessor for said premises the sum of fifteen dollars ($15) in advance; * * *

"The lessee further agrees that he will at all times keep said premises in a clean and orderly manner and will permit no refuse or paper to accumulate in said premises; * * *

"It is agreed between the parties hereto that if any of the obligations to be performed on the part of the lessee, including the payment of rent, shall remain unperformed by said lessee for a period of fifteen (15) days, then and without demand made therefor the lessor may terminate this lease and it shall thereupon become null and void; * * *." •

On December 27, 1944, the plaintiff gave his check for the sum of $15 to Aska in payment of the first month's rent of the leased premises. Thereafter, the plaintiff delivered to Aska, plaintiff's checks, each for the sum of $15 and dated, respectively, January 18, 1945, February 18, 1945, March 15, 1945, April

15, 1945, May 15, 1945, June 15, 1945, July 16, 1945, August 15, 1945, September 15, 1945, and October 15, 1945, in payment of rent for the premises. Each of the checks was delivered by plaintiff to Aska from two to four weeks after their respective dates. At one time Aska notified plaintiff that he had not made a rental payment at the time provided in the lease, but did not call on the plaintiff for compliance with the terms of the lease or notify him that in the event of his failure to comply Aska would terminate the lease in accordance with its terms.

On November 19, 1945, plaintiff tendered Aska a check for $15, bearing date November 15, 1945, in payment of rent, which Aska refused to accept. He informed plaintiff that he was taking advantage of his rights, under the contract of lease, to declare the lease void. Aska, in his conversation with plaintiff and by letter of November 16, 1945, to plaintiff, predicated such forfeiture solely on plaintiff being in default in payment of rent and thereby limited his right to declare a forfeiture to such contention. It is, therefore, unnecessary to determine whether plaintiff was otherwise in default.

A number of months prior to this, Aska, without notifying the plaintiff and without the plaintiff's consent, stored on the premises leased by plaintiff a large restaurant counter and kept it there for a period of not less than three months. The reasonable value of such storage was $5 per month, making the total value of such storage $15.

Aska, after declaring the forfeiture, attempted to take possession of the premises and exclude the plaintiff therefrom. Plaintiff then instituted this action.

The time of commencement of the term (of a lease) depends primarily upon the terms of the lease; secondarily upon the circumstances surrounding the trans-

action. Accordingly the lease may as to its commencement operate prospectively or retrospectively from the execution of the lease according to the intention of the parties and the language employed by them. See *Noyes* v. *Loughead,* 9 Wash., 325, 37 P, 452; *Spring* v. *Lorimer,* 25 Pa. Sup., 340.

The terms of the written lease executed by the parties are clear and unambiguous as to the time of its commencement as of the first day of December 1944 and the time of commencement operated retrospectively to that date notwithstanding the lease was not executed until December 26, 1944. Consequently plaintiff, under the terms of the lease, was obligated to pay rent for the leased premises, from the first day of December 1944.

The plaintiff was, therefore, in default in the payment of rent, as prescribed by the contract of lease, for more than 15 days each month until he became entitled to the credit of $15 on the rental by reason of the storage of the counter. When that credit became due to plaintiff, the future rental payments made by plaintiff were made within 15 days from the time such rent became due under the terms of the lease, so that at the time plaintiff tendered to Aska, on November 19, 1945, the rental payment evidenced by plaintiff's check of November 15, 1945, the plaintiff was not in default in the payment of rent for the period of 15 days, which default was prescribed as a condition precedent to the right of Aska to terminate the lease.

Although Aska, under the lease, had the option, upon the failure of plaintiff to pay the rent within 15 days after the same became due, to terminate the lease, such option could be exercised only at a time plaintiff was in default for such period, and, as Aska did not attempt to terminate the lease until the time

plaintiff was not in default, Aska's action in so doing was not authorized by the lease and had no legal effect. Accordingly, the lease remains in full force and effect notwithstanding Aska's attempt to terminate the same.

Furthermore, even if plaintiff had not been entitled to such credit on the rent and had been in default for more than 15 days in the payment of rent at the time Aska attempted to terminate the lease, Aska would have had no right to terminate the lease, because of his course of dealing in accepting overdue rent.

"When a landlord, by a course of dealing in accepting overdue rent, has put a tenant off his guard, a forfeiture of the lease for a delayed payment of rent cannot be enforced, unless notice has been given to the tenant calling on him for a compliance with the strict terms of the lease; and equity will relieve from such a forfeiture." Annotation, 16 A. L. R., 443, citing *Merrill* v. *Trimmer,* 2 Pa. Co. Ct., 49. See, also, *Thropp* v. *Field,* 26 N. J. Eq., 82.

It is, therefore, ordered, adjudged and decreed that, upon plaintiff paying to Aska or to the clerk of courts subject to the order of Aska the balance of the rent due under the terms of the written lease above referred to, after allowing credit to himself on such rent the sum of $15 for the storage, an order of injunction issue herein as prayed for in plaintiff's petition, at costs of Aska. In computing the balance due on the rent, the plaintiff shall use December 1, 1944, as the commencement date of the term of the lease. Upon payment of such balance, as hereinbefore prescribed, and entry of judgment herein prescribed, the cause shall be remanded to the Court of Common Pleas for execution.

*Decree accordingly.*

MIDDLETON, P. J., and JACKSON, J., concur.