CROSSROADS SOMERSET LTD, APPELLEE, *v.* NEWLAND, APPELLANT.

(No. 87AP-362—Decided December 21, 1987.)

*Schottenstein, Treneff & Williams* and *James M. Schottenstein,* for appellee.

*Bruce H. Kiracofe* and *Columbus Housing Law Clinic,* for appellant.

BRYANT, J. Defendant-appellant, Betty Newland, appeals from the judgment of the Franklin County Municipal Court granting plaintiff restitution of the premises at issue.

At the time of the hearing on plaintiff's complaint in forcible entry and detainer, defendant was, and had been for approximately ten years, a tenant on plaintiff's premises. Throughout the course of her tenancy, defendant had made rental payments beyond the due date. Nonetheless, all of defendant's rent had been accepted and defendant had paid in full.

On June 1, 1986, plaintiff advised all of its tenants that it was instituting

a new policy regarding late payment of rent. Effective July 1, 1986, the policy dictated that, although rent was due on the first of each month, a tenant could make three late monthly payments during any twelve-month period as late as the fifth of the month and still comply with plaintiff's rent payment policy. Moreover, one of the three late payments could be as late as the fifteenth of the month and still meet plaintiff's requirements for rent payment.

Despite the new policy, defendant was late with her rental payments for the months of July, August, October and November. In July, defendant paid her rent on July 8. In August, she tendered a check on August 5; however, the check was returned for insufficient funds. Defendant did not complete payment of rent for August until September 5. She paid October's rent on October 15, and November's rent on November 14.

On January 7, 1987, defendant tendered a check for rent for January 1987. Plaintiff's representative declined to receive the check, as plaintiff's payment ledger noted that defendant's checks were to be refused due to prior problems with insufficient funds. Accordingly, plaintiff's representative instructed defendant to return with a money order. Defendant insisted that plaintiff had accepted checks routinely in the past. Nonetheless, plaintiff's representative refused to accept defendant's check.

The following morning, plaintiff discovered defendant's check had been slipped through the door. Plaintiff returned the check to defendant with a letter indicating that contact with defendant's credit union revealed that defendant's account lacked sufficient funds to cover the amount of the check.

On January 8, plaintiff delivered to defendant a notice to leave the premises, which stated:

"You are hereby notified that we want you on or before January 18, 1987, to leave the premises you now occupy and which you have rented of us, situated and described as follows: 3264 Raynor Drive, Lot No. 291, Columbus, Ohio 43219, in Columbus, County of Franklin, and State of Ohio. Grounds: nonpayment of rent and continual late payment; as of January 8, 1987, the total amount due is $234; rent for January of $227 plus late fees of $7 for a total amount due of $234. As of the date that you receive this notice, you have ten (10) days in which to present in writing your objections to this notice to owner/agent and request a meeting. If you refuse to leave this unit within ten (10) days, Crossroads/Somerset may enforce this notice ONLY by bringing a judicial action. If a judicial action is brought, you have the right to present a defense."

The notice concluded with the mandatory statutory language and was signed by Ben Barry.

On January 15, 1987, defendant contacted plaintiff's office to arrange a meeting to discuss the contents of the notice. The meeting was set for mid-afternoon on January 19, 1987. Inasmuch as plaintiff's representative, Ben Barry, was to be absent from the office at that time, one of the office staff was to attend the meeting. Despite the necessity of her attendance, that staff member only tentatively could commit herself to being present, as she had a doctor's appointment. Defendant did not appear for the meeting because she worked double shifts on January 19. She called plaintiff's representative at 8:30 a.m. on January 20 to explain her absence and to request that the meeting be rescheduled. Plaintiff's representative advised defendant that the papers had already been forwarded

to begin court action against defendant.

Defendant had an overdraft policy with her credit union at the time plaintiff refused to accept her January rent check for lack of sufficient funds.

Plaintiff filed its petition in forcible entry and detainer on January 23, 1987. On February 27, 1987, a hearing was held before a referee. During the hearing, defendant sought to file a counterclaim setting forth "an offset" defense. The referee refused to accept the counterclaim or to allow defendant to present evidence regarding the condition of the premises as an offset against any unpaid rent. Moreover, defendant attempted to introduce evidence as to plaintiff's policies regarding others with late rental payments. The referee refused to allow evidence of plaintiff's accommodation of other tenants' needs.

On March 24, 1987, the referee rendered findings of fact and conclusions of law, recommending that the possession of the premises be granted to plaintiff and that a writ of restitution issue. On the same day that the report was issued, the court entered a judgment entry adopting the referee's report and recommendation and granting judgment to the plaintiff for restitution of the premises.

On March 27, 1987, defendant filed objections to the referee's report and a motion to dismiss. Following cross-motions to strike various pleadings, a hearing was set for April 16, 1987 to rule on the procedural motions following the judgment entry. Defendant's counsel failed to appear due to a scheduled trial in the common pleas court of which defendant had advised both the court and plaintiff's counsel. The court waited one-half hour for defendant's counsel to appear for the April 16 hearing. Thereafter, the court overruled defendant's motion to continue the hearing. Relying on

*Cuyahoga Metropolitan Housing Authority* v. *Jackson* (1981), 67 Ohio St. 2d 129, 21 O.O. 3d 81, 423 N.E. 2d 177, the court overruled defendant's objections to the referee's report as "out of rule" and sustained plaintiff's motion to strike defendant's objections and motion to dismiss. At the same time, the court overruled defendant's motion to strike plaintiff's response to defendant's objections.

On April 23, 1987, defendant appealed setting forth the following assignments of error:

"1. The referee's conduct of the trial denied defendant-appellant a fair trial, and caused violation of her contractual rights under the lease, violation of her rights under Ohio law, violation of HUD requirements, and violation of her federal and state constitutional rights, in that:

"(A) The referee unlawfully excluded all of defendant-appellant's significant defenses and evidence at trial.

"(B) The referee unlawfully failed to dismiss even though plaintiff-appellee served on defendant-appellant an improper '10-day notice' and even though they [*sic*] also then denied her any meaningful meeting with them [*sic*] about the proposed lease termination; and

"(C) The referee unlawfully refused to dismiss this action even though appellee failed to attach to the complaint a full and accurate copy of the lease, but instead attached only a partial copy which excluded the language about a tenant's rights pertaining to evictions under the lease.

"2. The referee's findings of fact and conclusions of law are mutually and internally inconsistent, unsupported by the evidence, and constitute abuse of discretion in this case.

"3. The judge erred to the prejudice of defendant-appellant by overruling her motion to reschedule the mo-

tions' hearing, and then by proceeding with the motions' hearing in appellant's lawyer's absence, and then by denying appellant's [sic] motions on mistaken application [sic] of *Cuyahoga Metropolitan Housing Authority* v. *Jackson,* 67 Ohio St. 2d 129.''

Defendant contends that plaintiff has waived defendant's failure to make timely rental payments as a basis for eviction. More particularly, defendant contends that throughout the ten years she has lived on the premises in question, she has consistently made full, but nonetheless untimely, rental payments, and that defendant acquiesced in that conduct throughout the ten years. More recently, plaintiff instituted a new policy allowing only three late payments. While defendant acknowledges receipt of notice of the new payment policy, she contends that the plaintiff granted her dispensation from that policy. Plaintiff vehemently disagrees. Regardless whether plaintiff granted defendant any dispensation from the strictures of the new payment policy, the record is quite clear that prior to January 1987, defendant was late four times with her rental payments. In the six-month period from July through December 1986, defendant violated plaintiff's new late-payment policy three times. Nonetheless, even after the third violation, defendant did not enforce the policy. Rather, plaintiff continued to accept defendant's late rent. Given plaintiff's acquiescence in defendant's late payments, the trial court abused its discretion in failing to hold that plaintiff waived its new payment policy. See *Southern Hotel Co.* v. *Miscott, Inc.* (1975), 44 Ohio App. 2d 217, 73 O.O. 2d 235, 337 N.E. 2d 660.

Plaintiff, however, asserts that each time defendant made a late rental payment between July and December 1986, it advised defendant of the need for prompt payment by inserting a "boilerplate" reassertion of the new payment policy with defendant's late notices. Such actions do not overcome the fact that plaintiff permitted defendant to violate the policy three times, and yet, despite the renewed notices, to retain possession of the premises. Accordingly, we must conclude that plaintiff waived as to this defendant the new payment policy instituted in July 1986. Therefore, plaintiff could not properly evict the defendant for nonpayment of rent tendered in full on January 7, 1987.

Despite the foregoing, plaintiff asserts that defendant's check was unacceptable, as other checks from defendant had failed to clear for lack of sufficient funds. Indeed, plaintiff notes, its own ledgers indicated that checks were no longer to be accepted from defendant. However, the record contains no evidence that defendant had ever been advised that checks were unacceptable. Indeed, the lease agreement provides for charges for late payments and "returned checks," thus tacitly approving payment by check. Plaintiff, nonetheless, seeks to justify its actions by suggesting that defendant's check would not have cleared due to insufficient funds. To the contrary, the evidence shows that plaintiff never presented the check for payment; and even if defendant may have lacked sufficient funds at the moment plaintiff called to check the balance of defendant's account, such evidence does not prove that insufficient funds were a problem on presentation of the check for payment. Indeed, in support of the fact that funds would have been available on presentation of the check, defendant introduced evidence that she had an overdraft policy with her credit union pursuant to which checks would be covered despite the lack of funds in her account.

In the final analysis, the evidence reveals that plaintiff waived its new

payment policy by allowing defendant four late payments prior to seeking to evict her for late payment in January 1987. Moreover, the evidence further supports defendant's contentions that her payment by check in January 1987 would have satisfied her obligation for January of that year. Accordingly, defendant being in compliance with the lease as modified by plaintiff's own actions, plaintiff failed to carry its burden of proof, and the trial court improperly evicted the defendant for nonpayment of rent.

Defendant further contends that the ten-day notice failed to comply with applicable federal regulations and therefore was insufficient to initiate an eviction proceeding against the defendant. In particular, defendant notes that the significant purpose of the meeting between the landlord and tenant is to discuss the problems giving rise to the ten-day notice, and that plaintiff abrogated that role by virtue of the language of its ten-day notice: "If you refuse to leave this unit within ten (10) days, Crossroads/Somerset may enforce this notice ONLY by bringing a judicial action." In essence, defendant contends that under plaintiff's notice, the meeting between landlord and tenant is a meaningless exercise since, pursuant to the language of the notice, defendant is required to remove herself from the premises within ten days despite the meeting. Hence, eviction is a foregone conclusion despite the remedial purpose of the meeting under federal regulations.

While plaintiff is correct in asserting that it may properly combine the requirements of federal and state law into one notice of eviction, *Sandefur Co.* v. *Jones* (1982), 9 Ohio App. 3d 85, 9 OBR 135, 458 N.E. 2d 390, plaintiff nonetheless is required to fulfill the purpose of the federal regulations. Clearly, that purpose envisions a meeting between landlord and tenant in which both parties attempt to resolve whatever problems gave rise to the ten-day notice. Contrary to that intent, plaintiff's notice specifically indicates that the meeting will be useless and that the tenant will be required to remove herself within ten days, despite the opportunity to request a meeting with the landlord. Hence, we agree that the ten-day notice herein is invalid.

In her third assignment of error, defendant contends that the trial court erred in refusing to consider defendant's objections to the referee's report. Relying on *Cuyahoga Metropolitan Housing Authority* v. *Jackson, supra,* the trial court concluded that Civ. R. 53(E) was inapplicable to forcible entry and detainer actions.

However, subsequent to *Jackson,* Civ. R. 53(E) was amended, effective July 1, 1985. Pursuant to Civ. R. 53(E)(7), a court may enter judgment based on a referee's report without waiting for objections from the parties. Nonetheless, the rule continues:

"* * * [B]ut the filing of timely written objections to the referee's report shall operate as an automatic stay of execution of that judgment until the court disposes of those objections and thereby vacates, modifies or adheres to the judgment previously entered. * * *"

Given the foregoing, the issue presented is whether the amendments to Civ. R. 53(E) address the element of the pre-amendment rule with which the Supreme Court found fault in *Jackson* so as to allow application of amended Civ. R. 53(E) to actions of this nature. In *Jackson,* the court focused on the delaying effect of the pre-amendment rule which required a fourteen-day interim between the filing of the referee's report and the court's judgment entry:

"* * * Civ. R. 53(E), requiring a 14 day delay between the filing of the

report by the referee and the final judgment entry by the judge, by its nature is clearly inapplicable since it would destroy the summary nature of forcible entry and detainer proceedings." *Id.* at 132, 21 O.O. 3d at 83, 423 N.E. 2d at 179.

In examining amended Civ. R. 53(E), we find that the element of delay which formed the basis for the *Jackson* decision has been eliminated. In its amended form, Civ. R. 53(E) allows judgment to be taken as quickly as under *Jackson*.

Nonetheless, plaintiff contends that even amended Civ. R. 53(E) causes unnecessary and prejudicial delay by allowing a party to postpone execution on a judgment simply by filing what may amount to frivolous objections. Plaintiff's contention is not well-taken. Indeed, we will not eliminate a party's opportunity to validly contest a referee's report simply because some post-judgment delay results. A similar delay occurs when a judgment in an eviction action is appealed; yet, that delay does not justify abolishing or amending the appellate procedure. Moreover, to the extent an attorney files frivolous objections, he or she is subject to the sanctions specified under Civ. R. 11.

In the final analysis, we conclude that amended Civ. R. 53(E) specifically addresses and remedies the faults *Jackson* found with pre-amendment Civ. R. 53(E). Inasmuch as we see no reason that the amended version should not apply to forcible entry and detainer actions, the trial court erred in refusing to consider defendant's objections under the parameters of amended Civ. R. 53(E).

In light of the foregoing, we sustain defendant's first, second, and third assignments of error to the extent set forth above. To the extent any of defendant's other arguments delineate error committed by the trial court, they are overruled as nonprejudicial in light of the foregoing rulings.

Accordingly, the judgment of the trial court is reversed and this matter is remanded to the trial court for entry of judgment in accordance herewith.

*Judgment reversed and cause remanded.*

WHITESIDE and BOWMAN, JJ., concur.