SCHROEDER COMPANY, d.b.a. Norwich Apartments, Appellee,

v.

Doniesha COATES et al., Appellants.

[Cite as *Schroeder Co. v. Coates,* 172 Ohio App.3d 254, 2007-Ohio-2956.]

Court of Appeals of Ohio,
Sixth District, Lucas County.

Nos. L–06–1277 and L–06–1278.

Decided June 15, 2007.

Milton E. Pommeranz, for appellee.

Veronica L. Zoltowski, for appellants.

PIETRYKOWSKI, Presiding Judge.

{¶ 1} This consolidated appeal is before the court following the July 29, 2006 judgments of the Toledo Municipal Court that found that plaintiff-appellee, Schroeder Company, was entitled to restitution of the separate apartment units rented by defendants-appellants, Doniesha Coates and Jeannine Ragland, based upon late rental payments. For the reasons that follow, we affirm the trial court's judgments.

{¶ 2} The facts of this case are as follows. Appellee, Schroeder Company ("Schroeder"), is an Ohio corporation doing business as Norwich Apartments and Byrneport Apartments, both located in Toledo, Lucas County, Ohio. The apartment complexes are federally subsidized through the United States Department of Housing and Urban Development ("HUD"). Appellant Doniesha Coates resides at Norwich Apartments, and appellant Jeannine Ragland resides at Byrneport Apartments.

{¶ 3} On April 3 and 4, 2006, Schroeder filed complaints in forcible entry and detainer against Coates and Ragland. Both complaints alleged that appellants failed to pay rent for March 2006, were served with a "10–Day Notice to Vacate Premises and Termination of Lease" ("ten-day notice"), and were given until March 20, 2006, to vacate the premises. The complaint against Coates alleged that she owed a balance of $313; the Ragland complaint alleged that she owed a balance of $33.

{¶ 4} Separate hearings on the complaints were held on May 2, 2006. At the Coates hearing, testimony was presented by Judy Zavac, Norwich Apartments manager, and from Coates. Zavac testified that Coates's monthly rent is $88, due the first of each month (with a five-day grace period); Zavac stated that she never accepts rent after the tenth of the month. Zavac admitted that Coates had previously paid her rent late and that she was served with a notice to leave in December 2005.

{¶ 5} Specifically, evidence was presented that Coates's October 2005 rent was paid on October 4, her November 2005 rent was paid on November 29, her December 2005 and January 2006 rents were paid on January 6, and her February rent was paid on February 6. There were also late fees assessed for late rental payments for the months of June and September 2005 and January 2006.

{¶ 6} Coates testified that she entered her lease with Norwich in April 2005; her rent was initially $25 per month. In March 2006, it was $88 per month. Coates testified that during the 2005–2006 lease term, she had paid her rent late about three or four times. In December 2005, Coates received a ten-day notice. Coates testified that she spoke with Zavac, who indicated that she could pay her rent whenever she had the money. Coates then paid her December rent in January 2006.

{¶ 7} Coates testified that she never received the March 9, 2006 ten-day notice; she first saw it when she received a copy of the eviction complaint. Coates contended that she was not aware that she owed, at the time, $212 in late fees. Coates stated that she intended to pay her March 2006 rent as soon as she received her check, the first or second of April. Finally, Coates testified that she had received no notice that late payments would no longer be accepted.

{¶ 8} During Jeannine Ragland's hearing, the following testimony was presented. Gloria Haas testified that she is the Byrneport Apartments manager. Haas testified that Ragland's lease term was from November 1, 2005, through October 31, 2006. Ragland paid rent of $25 per month; rent was due on the first day of each month and no later than the fifth of the month.

{¶ 9} According to Haas, on March 9, 2006, Ragland was served with a ten-day notice to vacate. Ragland offered to pay the March rent on April 14, 2006; Haas told Ragland that it was too late and that she had a right to defend herself in court. Haas testified that it is Schroeder's policy that after a ten-day notice is posted, but within the ten days, if a tenant explains his or her circumstances for failing to pay rent, the parties may be able to come to an agreement.[1] Haas

---

1.  {¶ a} The policy is evidenced on the "10–Day Notice to Vacate Premises and Termination of Lease." The notice (which, other than the apartment and manager names, is identical to the one Coates allegedly received) provides:

stated that Ragland never approached her in the ten days following the notice posting.

{¶ 10} Haas testified that Ragland did not pay rent at all in November 2004 (under a prior lease), due to a fire in her apartment. Her November and December 2004 rents were paid on December 22, 2004. Haas testified that Ragland was given leeway because she had to move from Norwich Apartments to Byrneport.

{¶ 11} Haas testified that they serve ten-day notices, in part, as a reminder that the rent has not been paid. Haas clarified that the notice also means that they will seek judicial action if the rent is not paid within the ten-day period. Haas testified regarding several ten-day notices that were served on Ragland from December 2004 through the March 2006 notice at issue in this case. Haas testified that because Ragland always paid her rent within the ten-day notice period, they never commenced a court action.

{¶ 12} Haas provided the following testimony and documentary evidence regarding Ragland's rental-payment history. Seven ten-day notices were issued to Ragland between December 2004 and March 2006. On December 10, 2004, a notice was posted; the rent was paid on December 22, 2004. On January 10, 2005, a notice was posted; the rent was remitted on January 13, 2005. On August 9, 2005, a notice was posted; the rent was paid on August 12, 2005. On September 12, 2005, a notice was posted; the rent was remitted on September 16, 2005. On October 10, 2005, a notice was posted; the rent was paid on October 19, 2005. On February 9, 2006, a notice was posted; the rent was paid on February 21, 2006. Finally, on March 9, 2006, a notice was posted; this is the notice currently at issue. In addition, Ragland paid her rent five to eight days late for the months of February, March, November, and December 2005 and January 2006.

{¶ 13} Haas testified that had Ragland contacted her within the ten-day period, it might have been possible to work out a payment arrangement. Haas testified that April 14, 2006, was the first time Ragland contacted her about her late March 2006 rent. At that time, Haas told Ragland that she could not accept her rent and that a court action would be commenced.

{¶ 14} Jeannine Ragland testified next. Ragland testified that she had previously paid her rent late and that no one had informed her that Byrneport would no longer be accepting late payments. Ragland testified that she has three

{¶ b} "You have the right to discuss this termination notice at the Byrneport Apartments office *within (10) days of your receipt of this notice.* Please schedule an appointment with Gloria Haas, manager, * * *. If you fail to respond or vacate within ten (10) days, the owner may seek to enforce this termination only by initiating a judicial action." (Emphasis sic.)

young children and that she receives $85 per month in support from family members. Her $25 rent is paid from that sum. Ragland stated that she did not pay her rent in March 2006 because her brother had been laid off and was unable to give her the money.

{¶ 15} Ragland testified that on March 28, 2006, her brother gave her money. She then contacted Haas, who told her that she would not accept the rent. Ragland testified that she had received several ten-day notices in the past but that an eviction was never filed against her.

{¶ 16} On May 11, 2006, the magistrate issued his decisions. In both cases, the magistrate found that appellants had established a pattern and practice of Schroeder accepting late rent. The magistrate further found that Schroeder had failed to notify the tenants that it would no longer accept late rent. On May 12, 2006, the trial court adopted the magistrate's findings.

{¶ 17} On May 25, 2006, Schroeder filed objections to the magistrate's decision in each case. Schroeder argued that the forcible entry and detainer actions were commenced in accordance with its well-established rent-collection policy. Schroeder stressed that it will accept late payment of rent during the ten-day notice period; thereafter, if "reasonable evidence" of the tenant's inability to pay has been provided, accommodations are possible. Schroeder argued that no evidence was presented to demonstrate that Coates's and Ragland's failures to pay were anything other than neglect. Further, the parties failed to approach their apartment managers prior to the expiration of the notice period.

{¶ 18} On July 29, 2006, the trial court found Schroeder's objections well taken, finding that the "late payment of rent was not a substantial waiver of rental payments as the Defendant was aware of the ten (10) day grace period. The plaintiff did not waive its right to demand that rental payments be made timely."

{¶ 19} The trial court granted appellants' motions to stay execution of the writ of restitution; this appeal followed. Appellants now raise the following three assignments of error:

{¶ 20} "Assignment of Error No. I

{¶ 21} "The trial court erred in ruling that appellee's repeated acceptance of late rent was not a substantial waiver that established a pattern and practice modifying the parties' lease agreements.

{¶ 22} "Assignment of Error No. II

{¶ 23} "The trial court erred in ruling that appellee's alleged unwritten policy allowing only a ten day grace period was binding on the appellants.

{¶ 24} "Assignment of Error No. III

{¶ 25} "The trial court erred in not ruling that the 10–Day Notice was defective and therefore invalid."

{¶ 26} Appellants' first assignment of error contends that the trial court erroneously determined that prior acceptance of late rental payments was not a substantial waiver of appellants' obligation to make timely rental payments. In support of their argument, appellants rely on a line of cases that discuss the effect of a landlord and tenant's course of dealing on the landlord's ability to demand forfeiture. In *Bates & Springer, Inc. v. Nay* (1963), 91 Ohio Law Abs. 425, 187 N.E.2d 415, the court held that "in order to establish a right to forfeiture where payments have been made for a period of time substantially beyond the due date * * * the landlord is required to give notice in writing in advance of his intention to require strict compliance with the terms of the lease." The case involved a three-year lease period and the rent payments at issue, due on the first of the month, were tendered on the "22nd, 18th, 21st, 28th, 24th and other later dates." Id. The earliest payment was on the 13th of the month, and the latest payment was on the 28th of the month. Id.

{¶ 27} Similarly, in *Lauch v. Monning* (1968), 15 Ohio App.2d 112, 44 O.O.2d 239, 239 N.E.2d 675, the tenant habitually paid his monthly rent late (beyond the ten-day grace period). Rent was due at the first of the month; the earliest payment was made on the 4th, but most of the payments were made between the 25th and the beginning of the subsequent month. The *Lauch* court determined that the landlord waived any right to claim forfeiture based on the late payments without first giving the tenant notice of his intent to require strict compliance with the lease provisions. Id. at 113, 44 O.O.2d 239, 239 N.E.2d 675.

{¶ 28} Opposing appellants' argument that the parties' course of dealing should preclude forfeiture absent notification, Schroeder cites this court's case captioned *Southgate Woods Apts. v. Lanier* (Nov. 25, 1983), 6th Dist. No. L–83–189. In *Southgate Woods,* the rent the landlord accepted was typically "only several days late," and "the latest payment accepted was 13 days late." Id. Distinguishing *Lauch,* the court stated that although appellant had accepted late payments each of the 14 months preceding the notice to vacate, the payments were made only a few days late. Id. The court noted that although a landlord has discretion in granting a tenant a waiver or waivers, "[h]e is at liberty to end, once and for all, a course of conduct which is detrimental to his interest and the interest of his mortgagee." Id.

{¶ 29} Upon review, we find that the facts of this case are more akin to those in *Southgate Woods.* Although Coates and Ragland paid their rent late on several occasions, it was not paid beyond the ten-day notice absent special circumstances.[2] Coates did not attempt to tender the March 2006 rent until April

---

2. Appellants argue that Schroeder did, in fact, accept payments beyond the ten-day notice period. As set forth above, two payments by Ragland were received one day late. Apartment

14, 2006, after both the March and April rents were past due. Ragland attempted to pay her rent on March 28, 2006, eight days after the termination date listed on the ten-day notice. Based on the foregoing, we find that Schroeder did not waive its right to demand timely payment of rent. Appellants' first assignment of error is not well taken.

{¶ 30} Appellants, in their second assignment of error, contend that the trial court erroneously determined that Schroeder's unwritten ten-day grace period was binding on the parties. Specifically, appellants argue that the policy is not contained in their leases and that the policy was not applied consistently.

{¶ 31} In their prior assignment of error, appellants referred to the phrase "course of dealing." Both Zavac and Haas testified that appellants were aware of the policy and that Schroeder has firmly adhered to the policy. The relevant HUD provisions require a ten-day notice period; the fact that Schroeder accepts payment during that period simply serves as a waiver of the notice to vacate.

{¶ 32} Appellants further argue that they were never informed of what "legitimate" excuses would be accepted for payment of rent beyond the ten-day period. Initially, we note that appellants never attempted to provide an excuse for nonpayment of rent during the ten-day period in March 2006. Further, HUD requires that individuals receiving subsidized housing be allowed an opportunity to discuss the proposed lease termination with their landlord. Certainly, the unique facts of each case, including past rent-payment history, would need to be considered in determining whether a tenant has a legitimate reason for nonpayment of rent. Appellants' second assignment of error is not well taken.

{¶ 33} In their third and final assignment of error, appellants argue that the trial court erred by not ruling that the ten-day notice was defective and, therefore, invalid. Appellants contend that because the ten-day notice merely serves as a reminder to pay rent, it does not comply with R.C. 1923.04 and cannot be used to terminate the leases.

{¶ 34} In addition to complying with Ohio statutory law, a landlord who accepts federal subsidies must also comply with federal law prior to termination of a lease. These requirements are specifically enumerated in the leases signed by appellants and provide:

{¶ 35} "All termination notices must:

---

manager Haas testified that she was not sure when Ragland placed the money order in the "rent slot," so she gave her the benefit of the doubt. In November 2004, Ragland did not pay any rent, but Schroeder gave her some leeway due to a fire in her apartment that required her to move. Testimony was presented that Coates did not pay her December 2005 rent until January 2006. Coates testified that she received a ten-day notice, spoke with Zavac, and was told "not to worry about it."

{¶ 36} "1. specify the date this Agreement will be terminated;

{¶ 37} "2. state the grounds for termination with enough detail for the Tenant to prepare a defense;

{¶ 38} "3. advise the Tenant that he/she has 10 days within which to discuss the proposed termination of tenancy with the Landlord. The 10-day period will begin on the earlier of the date the notice was hand delivered to the unit or the day after the date the notice is mailed. If the Tenant requests the meeting, the Landlord agrees to discuss the proposed termination with the Tenant; and

{¶ 39} "4. advise the Tenant of his/her right to defend the action in court."

{¶ 40} The additional protections afforded to tenants in subsidized housing underscores the long-standing principle that "the law abhors a forfeiture." *S. Hotel Co. v. Miscott, Inc.* (1975), 44 Ohio App.2d 217, 221, 73 O.O.2d 235, 337 N.E.2d 660. In addition to providing the federally mandated ten days prior to termination of the lease and the opportunity to meet with the landlord and present a defense, Schroeder allowed tenants the opportunity to pay their rent within the ten-day period. We can find no error in this practice. Because we find that the ten-day notice complied with state and federal law, we also find that appellants' third assignment of error is not well taken.

{¶ 41} On consideration whereof, we find that substantial justice was done the parties complaining, and the judgment of the Toledo Municipal Court is affirmed. Appellants are ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerks' expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.

Judgment affirmed.

HANDWORK and OSOWIK, JJ., concur.