[Cite as *Woda Mgt. & Real Estate, L.L.C. v. Grant*, 2017-Ohio-7114.]

## IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HANCOCK COUNTY

WODA MGT & REAL ESTATE, LLC,

    PLAINTIFF-APPELLEE,

CASE NO. 5-16-43

    v.

STEPHEN GRANT, ET AL.,

    DEFENDANTS-APPELLANTS.

O P I N I O N

Appeal from Findlay Municipal Court

Trial Court No. 16-CVG-02628

**Judgment Affirmed**

**Date of Decision:  August 7, 2017**

APPEARANCES:

    *Kelli A. Bartlett* **for Appellants**

    *Garth W. Brown* **for Appellee**

**WILLAMOWSKI, J.**

{¶1} Defendants-appellants Stephen Grant and Mishka Grant ("the Grants") appeal the judgment of the Findlay Municipal Court, Hancock County, Ohio. The Grants rented a property owned and managed by plaintiff-appellee Woda Management and Real Estate, LLC ("Woda"). In this appeal, the Grants argue (1) that the trial court erred by holding that Woda gave them appropriate notice to leave the premises and (2) that the trial court failed to consider their equitable defenses. For the reasons set forth below, the judgment of the lower court is affirmed.

*Facts and Procedural History*

{¶2} Woda owns and manages a low income housing tax credit property in Rawson, Ohio. Tr. 9. On November 11, 2011, the Grants signed a lease agreement with Woda, taking possession of the leased premises in December 2011. Doc. 1. Rent was set at $715 per month, but the Grants, as participants in a government housing program, only had to pay $388 of this total amount with the Hancock Metropolitan Housing Authority paying the remaining balance. Tr. 10, 51. Under the terms of their lease, the Grants were required to tender their portion of the rent no later than the fifth of the month. Doc. 1. If the Grants did not pay their rent by the first of the month, the Grants were assessed a late fee of $20. Tr. 12. Doc. 1. If the Grants did not pay the amount due under their lease by the fifth of the month, Woda, in the terms of the lease agreement, reserved the right to

terminate the Grants' lease for the nonpayment of rent. Doc. 1. The lease further specified that the "[l]andlord may terminate this Lease for nonpayment of rent, as explained in this Lease, even though the Landlord may have, in prior months, chosen to collect the late fee instead of terminating the lease." *Id.*

{¶3} The Grants testified that in between December 2011 and October 2016 their rental payment to Woda was late around seventy-five to eighty percent of the time. Tr. 54, 71. The Grants also testified that they were three months behind on their rent for a period of time in 2013. Tr. at 52-53. However, Woda did not exercise its right under the lease agreement to evict the Grants for nonpayment or late payment of rent on any of these occasions. Tr. at 52-53. On February 29, 2016, Woda hired Susan King ("King") to be the property manager at the Rawson, Ohio housing complex where the Grants were tenants. Tr. at 8. King was the first property manager in some time who was tasked with the job of overseeing this specific location. Tr. at 40. Previously, Woda's district manager would periodically visit this location and monitor the property. Tr. at 40.

{¶4} As King began to carry out her duties, she chose to be lenient initially as the residents were unfamiliar with her and she was new at this housing complex. Tr. at 40. On August 31, however, King served the Grants with an eviction notice. Tr. at 39. The basis of this eviction was noncompliance with the terms of the lease agreement. Tr. at 39. Specifically, Woda cited several housekeeping issues and poor relations with the neighbors. Tr. at 42. In spite of

the eviction notice, the Grants attempted to tender their rental payment for the next month on September 5, 2016, but King returned the rental payment on September 16, 2016 as she was not sure whether Woda could accept rental payments while an eviction was underway. Tr. at 23, 56.

{¶5} King sought advice from legal counsel, who informed King that payment could be accepted during the course of an eviction if the basis of the eviction was noncompliance with the terms of the lease and not for the late payment of rent. Tr. at 24. Upon receiving this advice, Woda notified the Grants, on September 27, 2016, that they would accept the Grants' rental payment for the month of September. Tr. at 56. In response, the Grants tendered the amount due on their rent on September 30, 2016 and were, as a consequence, current on their rent going into the month of October. Tr. at 25.

{¶6} The Grants, however, did not tender their next rental payment by the deadline established in the lease. On October 11, 2016, Woda affixed a late rent notice onto the Grants' door that read, in its relevant part, as follows:

> **Your immediate remittance of $388.00 plus late fees of $20.00 is due by the end of business today, which is payment in full * * * for the rent and applicable late fee is necessary to avoid an eviction being filed against you.**

Ex. 2. Tr. 27. Since the Grants did not tender rent by the end of the day, on October 14, 2016, Woda posted an eviction notice on the Grants' door on October 14, 2016, that ordered them to vacate the premises by October 19, 2016. Ex. B.

Tr. 29. The eviction notice clearly stated that if the Grants did not vacate the premises by October 19, 2016, Woda would initiate an eviction action. Ex. 2, B. Tr. 28-30.

{¶7} At trial, King testified that this eviction process was conducted in accordance with Woda's standard procedures. Tr. 27-28. King also explained that Woda will often accept late rental payments as part of its standard procedures. Tr. at 28. In fact, at the time of the Grants' eviction, two other tenants were late on their rental payments for the month of October and late rent notices were served on both of these tenants. Tr. 30. An eviction notice was not served on either of these tenants, however, because each of them communicated with King, telling her, upon receipt of the late rent notice, that their rental payment would be forthcoming. Tr. 30-31. In her testimony, King contrasted this with the Grants, who did not communicate with King upon receipt of the late rent notice or the eviction notice. Tr. 31. Further, the Grants did not communicate with King by the eviction date of October 19, 2016. Tr. 31.

{¶8} The Grants attempted to tender their rental and late fee payment of $408 on October 20, 2016, but Woda refused the payment and returned the check to the Grants. Tr. at 31-32, 58, 60. The following month, on November 14, 2016, the Grants attempted to tender their rental payment, but Woda refused the payment and returned the check to the Grants. Tr. at 32-34, 58-60. On November 17, 2016, Woda filed a complaint for forcible entry and detainer in the Findlay

Municipal Court. Doc. 1. After this action was filed, the Grants attempted to tender another rental payment on December 5, 2016, but Woda again refused the payment and returned the check. Tr. at 32-34, 58-60. Doc. 1.

{¶9} This case was heard by the trial court on December 22, 2016. Tr. 1. On the same day, the trial court entered a judgment in favor of Woda, granting Woda a writ of restitution for the premises occupied by the Grants. Doc. 16. The Grants filed a notice of appeal on December 29, 2016. Doc. 20. On appeal, the Grants raise two assignments of error, which read as follow:

### First Assignment of Error

**The trial court erred in holding that Appellee's pattern and practice of accepting late rent did not remain in effect when it had given the Appellants a five day Notice to Leave the Premises.**

### Second Assignment of Error

**The trial court erred in awarding restitution when it failed to consider whether to grant equitable relief to prevent a forfeiture of Appellants' leasehold interest or, in the alternative, found that the equitable factors weighed against the Appellants.**

We will consider these two assignments of error in the order that they were presented in the appellants' brief.

### First Assignment of Error

{¶10} The Grants assert that Woda's practice of repeatedly accepting late rental payments from the Grants established a course of conduct. Appellants argue that this course of conduct governs the relationship between the parties until

the landlord provides the tenant with reasonable advance notice that the practice of tendering late rental payments is no longer permissible. In this situation, the Grants point to a provision in the lease to establish what a reasonable amount of time would be in this case. The lease agreement contains a provision that guarantees residents will have thirty days' advance notice before any new rules take effect. On the basis of this provision, the Grants argue that they should have had thirty days' advance notice before Woda decided to change the established course of conduct that allowed the late payment of rent. Ex. A. On the basis of this argument, the Grants contend that the trial court erred in granting restitution to Woda.

Legal Standard

{¶11} Under R.C. 1923.02(A)(9), a forcible entry and detainer action may be brought "[a]gainst tenants who have breached an obligation imposed upon them by a written rental agreement." R.C. 1923.02(A)(9). "The purpose of the forcible entry and detainer statutes is to provide a summary, extraordinary, and speedy method for the recovery of possession of real estate." *Long v. MacDonald*, 3d Dist. Crawford No. 3-02-10, 2002-Ohio-4693, ¶ 8, quoting *Cuyahoga Metro. Hous. Auth. v. Jackson*, 67 Ohio St.2d 129, 423 N.E.2d 177 (1981) (*superseded on other grounds by statute as stated in Miele v. Ribovich*, 90 Ohio St.3d 439, 739 N.E.2d 333). R.C. 1923.04(A), reads in its relevant part, as follows:

> **a party desiring to commence an action under this chapter shall notify the adverse party to leave the premises, for the possession of which the action is about to be brought, three or more days before beginning the action, by certified mail, return receipt requested, or by handing a written copy of the notice to the defendant in person, or by leaving it at the defendant's usual place of abode or at the premises from which the defendant is sought to be evicted.**

R.C. 1923.04(A).

{¶12} However, a traditional defense that prevents the immediate judicial enforcement of the strict terms of the lease may exist in some situations

> **where * * * a course of conduct is engaged in between the parties to a lease, which conduct is *contrary* to the specific provisions within the lease, such conduct will speak for itself, and the parties will be estopped from denying that conduct and its immediate and logical consequences.**

(Emphasis added.) *Quinn v. Cardinal Foods, Inc.*, 20 Ohio App.3d 194, 197, 485 N.E.2d 741, 744 (3d Dist.1984), quoting *Finkbeiner v. Lutz*, 44 Ohio App.2d 223, 227-228, 337 N.E.2d 655, 655 (1st Dist.1975). This traditional defense only prevents the immediate enforcement of the strict terms of the lease but does not prevent the strict enforcement of the terms of the lease in a future action. *Quinn* at 197, quoting *Finkbeiner* at 227-228.

{¶13} This defense has been applied in cases that address a variety of different lease agreement provisions. *See Checkers Pub, Inc. v. Sofios v. One 49 N., L.L.C.*, 2016-Ohio-6963, 71 N.E.3d 731, ¶ 35 (6th Dist.); *Colombo Enterprises, Inc. v. Convenient Food Mart, Inc.*, 8th Dist. Cuyahoga Nos. 80634,

81075, 80719, 81076, 80925, and 81074, 2003-Ohio-154, ¶ 20-21. This Court applied this traditional defense in the context of the late payment of rent in *Milbourn v. Aska*. *Milbourn v. Aska*, 81 Ohio App. 79, 83, 77 N.E.2d 619, 621 (3d Dist.1946). The *Aska* rule states that

> **[w]hen a landlord, by a course of dealing in accepting overdue rent, has put a tenant off his guard, a forfeiture of the lease for a delayed payment of rent cannot be enforced, unless notice has been given to the tenant calling on him for a compliance with the strict terms of the lease; and equity will relieve from such a forfeiture.**

*Id.*, quoting Annotation, 16 A.L.R., 443. Thus, under the proper conditions, "proof of a course of conduct of accepting late rent will bar a landlord from evicting unless that landlord has notified the tenant that he will no longer accept late rent." *Simco Management Property Corp. v. Snyder*, 7th Dist. Mahoning No. 98 CA 210, 2000 WL 309396, *5 (March 20, 2000), citing *Finkbeiner* at 226-227.

{¶14} "It is well established that leases are contracts and, as such, are subject to traditional rules governing contract interpretation." *Id.* at ¶ 13. "Contracts are to be interpreted so as to carry out the intent of the parties, as that intent is evidenced by the contractual language." *EAC Properties, L.L.C. v. Brightwell*, 10th Dist. Franklin No. 10AP-853, 2011-Ohio-2373, ¶ 13, quoting *Skivolocki v. E. Ohio Gas Co.*, 38 Ohio St.2d 244, 313 N.E.2d 374 (1974), paragraph one of the syllabus. "[A] court may not disregard specific provisions of a lease agreement * * *." *Real Properties Services Management v. Harigle*, 3d

Dist. Crawford No. 3-96-21, 1997 WL 430773, *2 (July 30, 1997). Thus, if there is no course of conduct that is inconsistent with the lease, the court will give effect to the clear language of the written provisions. *Langfan v. Carlton Gardens Co.*, 183 Ohio App.3d 260, 268, 2009-Ohio-3318, 916 N.E.2d 1079, 1085, ¶ 18 (3d Dist.), citing *Foster Wheeler Enviresponse, Inc. v. Franklin Cty. Convention Facilities Auth.*, 78 Ohio St.3d 353, 678 N.E.2d 519 (1997). "When the language of a contract is unambiguous, the construction of the contract is a matter of law for the court to decide." *Tiffin Avenue Investors v. Great Scot, Inc.*, 3d Dist. Hancock No. 5-90-62, 1991 WL 216866 (September 25, 1991). "Appellate courts review issues of law de novo." *Heritage Court, L.L.C. v. Merritt*, 187 Ohio App.3d 117, 2010-Ohio-1711, 931 N.E.2d 194, ¶ 14, citing *Lovewell v. Physicians Ins. Co. of Ohio*, 79 Ohio St.3d 143, 144, 679 N.E.2d 1119 (1997).

### Legal Analysis

{¶15} In this case, the Grants claim that the traditional defense set forth in *Aska* should be applied in this case. However, the *Aska* rule is only applicable to situations in which the parties to a lease agreement have engaged in a course of conduct that is contrary to the written provisions contained in the lease. If the course of conduct of the parties is consistent with the terms of the lease, there was no waiver of or deviation from the terms of the lease, leaving no alternative but to enforce the lease as written. In this case, Woda accepted late rental payments and terminated the lease in accordance with the provisions of the lease.

{¶16} In 2011, Woda and the Grants entered into a lease agreement that contained a provision that reads, in its relevant part, as follows:

> **If the Resident does not pay the monthly amount of the rent as required by this Lease by 5:00 p.m. on the 5th day of the month, the Landlord may collect a late fee of $20.00 on the 6th day of the month and $2.00 per day thereafter until the date the payment is received, up to a maximum of $50.00 per month.**
>
> **Landlord reserves the right to terminate this Lease for delinquent rent after the 5th of the month, which is default herein. Landlord may terminate this Lease for non-payment of rent, as explained in this Lease, even though the Landlord may have, in prior months, chosen to collect the late fee instead of terminating the Lease.**

Ex. A. This provision essentially guarantees that Woda has two different options every time a tenant does not pay their rent on time: (1) Woda can either accept the late rental payment with an additional fee or (2) Woda can terminate the lease for the late payment of rent. This provision expressly states that Woda's decision to choose the first option—to accept the late rent with an additional fee—in no way affects Woda's ability to exercise the second option—to terminate the lease for the late payment of rent—in the future. For this reason, Woda's decision to accept late rental payments should not be construed as a waiver of the right to terminate the lease for the late payment of rent or as a course of conduct that is contrary to the terms of the lease. Rather, Woda acted consistently with the language of the lease when it chose to accept late rental payments with an additional fee and when it chose to terminate the lease for the late payment of rent.

{¶17} The presence of this provision in this lease agreement distinguishes this case from the legal precedents cited by the appellants. These prior cases make no mention of a comparable provision that reserves the right of the landlord to terminate the lease for the late payment of rent regardless of whether the landlord's past practice was to tolerate late rental payments. *Lauch v. Monning*, 15 Ohio App.2d 112, 239 N.E.2d 675 (1st Dist.1968); *Aska, supra*, at 83; *Bates v. Springer, Inc. v. Nay*, 187 N.E.2d 415, 415-416 (8th Dist.1963); *Crossroads Somerset Ltd. v. Newland*, 40 Ohio App.3d 20, 531 N.E.2d 327 (10th Dist.1987). *See Schroeder Co. v. Coates*, 172 Ohio App.3d 254, 2007-Ohio-2956, 874 N.E.2d 832 (6th Dist.2007). Thus, the landlords in these previous cases were establishing an alternative pattern and practice of accepting late rent, contrary to the lease provisions.

{¶18} Further, the *Aska* rule protects tenants who have been led to believe—or had been "put * * * off [their] guard"—by a course of conduct undertaken by their landlord, that certain violations of the lease are permissible and will not be enforced. *Aska, supra*, at 83, quoting Annotation, 16 A.L.R., 443. In this case, if the Grants were "off [their] guard," it was not because of the conduct of Woda. The Grants had actual notice in the lease agreement that Woda reserved the right to terminate the lease for the late payment of rent regardless of whether late payment had been accepted in the past. Further, the express language of the lease agreement put the Grants on notice that they were at risk of eviction

for the late payment of rent every time they chose not to pay the amount due on their rent in a timely manner.

{¶19} In this case, the Grants did not need advance notice that the terms of the lease were going to be enforced because the terms of the lease agreement were not being violated—the terms of the lease *were* the required notice. Woda gave them the notice of late payment of rent and demanded payment, fulfilling the obligations imposed on them in the lease. Woda then notified the Grants of eviction. The Grants did not take action in response to either of these notices and only attempted to tender the late rental payment after the eviction date had passed. Since the traditional defense set forth in *Aska* is not applicable in this case, the Grants' first assignment of error is overruled.

*Second Assignment of Error*

{¶20} In this case, Woda is seeking an eviction of the Grants pursuant to R.C. 1923.02(A)(9), which allows a landlord to pursue a forcible entry and detainer action against a tenant "who [has] breached an obligation imposed upon them by a written rental agreement." R.C. 1923.02(A)(9). In their complaint, Woda alleged that the Grants failed to comply with a provision in the lease that required their rental payments to be tendered no later than the fifth of each month. Doc. 1. This provision expressly states that the late payment of rent may result in termination of the lease. Ex. A. In their answer to Woda's complaint, the Grants raised an equitable defense, claiming that the breach was minor and that forfeiture

is not equitable because the Grants can pay damages as a remedy in the place of forfeiture. Doc. 10.

**{¶21}** Under this assignment of error, the Grants argue that the trial court erred by failing to consider the equitable defenses raised by the Grants. The Grants argue that the record shows that the trial court did not consider any equitable factors in coming to its conclusion. The Grants assert that the equitable factors weigh in their favor because they did not act maliciously or willfully in failing to tender their rental payment on time. The Grants request that this Court weigh the relevant equitable factors contained in the record and reverse the trial court's decision to issue the writ of restitution.

Legal Standard

**{¶22}** Forfeiture is "a deprivation or destruction of a right in consequence of the nonperformance of some obligation or condition." *Barkacs v. Perkins*, 165 Ohio App.3d 576, 2006-Ohio-469, 847 N.E.2d 481, ¶ 11 (6th Dist.), quoting *Webster v. Dwelling-House Ins. Co.*, 53 Ohio St. 558, 563, 42 N.E. 546 (1895); Black's Law Dictionary (5th Ed.Rev.1979), 584–585. "Clauses in written leases which give lessors the right to declare forfeiture of a lease for nonpayment of rent are valid." *Zanetos v. Sparks*, 13 Ohio App.3d 242, 244, 468 N.E.2d 938 (10th Dist.1984). "Even where a cause of forfeiture is specifically mentioned in the lease, equitable considerations enter into the determination of such forfeiture and may relieve the lessee technically subject to forfeiture." *Dayton Metro. Hous.*

*Auth. v. Kilgore Eyeglasses*, 194 Ohio App.3d 767, 2011-Ohio-3283, 958 N.E.2d 187 41, ¶ 24 (2d Dist.), quoting Ohio Jurisprudence 3d, Equity, Section 36.

**{¶23}** "Equity functions to supplement the law where it is insufficient."

*Id*., quoting American Jurisprudence 2d, Equity, Section 1.

> **"The maxim, 'equity regards substance rather than form,' under which relief is granted against penalties and forfeitures and affirmative relief in aid of them is denied, does not apply to positive statutes, but only to conventional acts of parties. With respect to an act of the legislature, the maxim 'equity follows the law' governs the attitude of the court."**

*Id*., quoting 41 Ohio Jurisprudence 3d, Equity, Section 36.

> **[C]ourts have routinely recognized that equity abhors a forfeiture and that a forfeiture should not be declared where the equities of the parties can be adjusted. * * * "[U]nless a lessee's conduct is willful or malicious or if compensation for the breach cannot be made due to the lessor, a court exercising its equity powers will grant the lessee relief from forfeiture." Rather, "[t]he courts will balance the equities of the case and relieve the forfeiture where the equities favor the lessee."**

(Citations omitted.) *Bloom v. Third Lima Corp*., 3d Dist. Allen No. 1-93-66, 1994 WL 586402, *7 (Oct. 25, 1994), quoting *Zanetos* at 244. "Generally, courts, in balancing the equities, will relieve a tenant from the harsh consequences of a forfeiture where the payment of money damages will adequately compensate the landlord." *Gorsuch Homes, Inc. v. Wooten*, 73 Ohio App.3d 426, 435, 597 N.E.2d 554 (2d Dist.1992). However, a person "who seeks equity must do equity, and * * * must come into court with clean hands." *State ex rel. Morgan v. New Lexington*, 112 Ohio St.3d 33, 2006-Ohio-6365, 857 N.E.2d 1208, ¶ 53, quoting *Christman*

*v. Christman*, 171 Ohio St. 152, 154, 168 N.E.2d 153 (1960). "Equity refuses to lend its aid in any manner to one seeking its active interposition who has been guilty of inequitable conduct in the matter with relation to which he seeks relief." *Kinsman Nat. Bank v. Jerko*, 111 Ohio St. 633, 635, 146 N.E. 210, 211 (1924), citing 21 Corpus Juris, 182.

Legal Analysis

{¶24} In this case, we do not find evidence in the record that the trial court weighed the relevant equitable factors in reaching its decision or considered the equitable arguments against forfeiture made by the Grants.[1] Tr. 85. Thus, the writ of restitution appears to have been issued in favor of Woda without consideration of the equitable defense against forfeiture that the Grants raised. As we examine the record, however, we find that equitable relief is not appropriate under the circumstances present in this case. *See Gorsuch* at 435-436.[2]

{¶25} Equity values substance above form. *Kilgore, supra,* at ¶ 24. While this action, in its form, is a forcible entry and detainer action filed over the late payment of rent, this action, in its substance, is more complicated. The testimony reveals that Woda served the Grants with a notice of eviction on August 31, 2016

---

[1] Woda points to a portion of the record where the trial court mentions the equitable argument raised by the Grants. Tr. 85. However, this statement references another equitable argument made by the Grants based upon the rule set forth in *Aska*. Tr. 85.

[2] We have decided to follow the practice set forth in *Gorsuch*. *See Gorsuch* at 435-436. In this case, the Second District Court of Appeals found that the trial court did not consider the equitable defense. *Id.* at 435. Consequently, the court in *Gorsuch* did not expressly apply the abuse of discretion standard, which is the standard applied on appellate review where the trial court has weighed the equitable factors relevant to this defense. *Id. See Joseph J. Freed and Associates, Inc. v. Cassinelli Apparel Corp. Eyeglasses*, 23 Ohio St.3d 94, 96-97, 491 N.E.2d 1109, 1112 (1986). Rather, the appeals court, in *Gorsuch*, considered the information presented to the trial court and made a ruling on the equitable argument. *Id.* at 436.

but did not file an eviction action based upon that notice. Tr. 64. The eviction notice from August was not served for the late payment of rent. Rather, the basis of the earlier eviction notice was a number of housekeeping issues and the poor relationships that the Grants had with their neighbors. Tr. at 43, 64. Speaking of these issues, King testified that the Grants did "not [clean] the front porch. The front door itself was filthy and is filthy. There's an issue with how the carpeting looks and they were asked to have it professionally cleaned." Tr. at 42. According to the Grants, Woda began to have monthly inspections of the properties and would issue compliance notices for issues that tenants needed to address. Tr. at 76. Mr. Grant testified that he received notice in August of "tons of lease violations." Tr. at 64.

{¶26} Further, the Grants were also not on good terms with the other tenants, having threatened other tenants and their children. Tr. at 64. At one point, King described a situation where Mr. Grant threatened the children of other tenants, saying, "it's nothing that wouldn't be solved by a .9 millimeter." Tr. at 43. King testified that the Grants were "combative and argumentative about most of the things that go on around the neighborhood." Tr. at 78. She also stated at trial that the Grants have continued to behave in this manner after the eviction notice was served on them. Tr. at 78. In the context of discussing the behavior of the Grants, King was asked why Woda chose to evict the Grants on the basis of the late payment of rent instead of these other issues. Tr. at 78. King replied,

"Because it can't continue on." Tr. at 78. She then explained how Woda pursued the eviction on the basis of the late payment of rent because this was a straightforward violation of the express terms of the lease agreement. Tr. at 78. At the conclusion of her testimony, defense counsel engaged in the following exchange with King:

> **Q. But Ms. King you have continued to accept other people's late rent at the complex, correct?**
>
> **A. I have if they've given me notice. I don't go past late fees. They can be late and they get a late notice and if they don't pay then they get an eviction notice. And I will accept it after that if it's paid when they—if they call and tell me that they're going to be paying it on a specific time.**
>
> **Q. So really you're upset that the Grants didn't call you to tell you that they were paying their rent?**
>
> **A. Well, they don't follow the rules.**
>
> **Q. And you are upset that you don't think they are good tenants and that therefore that's the real reason that you don't want them there.**
>
> **A. They aren't good tenants.**

Tr. at 79. Again, this line of questioning reveals the substance of this action. While this case comes in the form of a forcible entry and detainer action over the late payment of rent, the substance of this case revolves around the Grants' housekeeping practices and behavior towards other tenants. These underlying issues cannot be addressed with money damages. *See Gorsuch, supra,* at 435.

{¶27} Additionally, even in the issues specific to the late payment of rent, the Grants behavior weighs against an equitable intervention. During cross examination, defense counsel questioned King as to why two other tenants who had late rental payments in October were not served with eviction notices. Tr. at 79. King explained that these two other tenants were served with late rental payment notices and subsequently contacted Woda to explain that payment was forthcoming. Tr. 30. In contrast, the Grants did not communicate with Woda regarding the notice that was posted. Tr. 31. After the eviction notice was posted, the Grants did not communicate with Woda about whether a payment was forthcoming and did not attempt to tender their rental payment for the month until after the date on which they were ordered to vacate the premises had passed. Tr. 31.

{¶28} In the following month, the Grants still did not comply with the terms of the lease agreement and attempted to tender their rental payment late. The Grants initially attempted to tender their rent on November 14, 2016, which was nine days after the due date for rental payments and three days before Woda had initiated an eviction action. Tr. 32-34, 58-60. While the Grants had notice from the lease agreement that Woda had the power to terminate the lease agreement for the late payment of rent, the Grants, at this point, also had notice that Woda was willing to use this power if the Grants paid rent late, yet the Grants still attempted to tender their rental payment past the deadline established in the

lease agreement. These actions are not consistent with the argument that the Grants did not have notice that termination could result from the late payment of rent due to Woda's course of conduct. Thus, we are not inclined to intervene in equity against forfeiture of this lease.

{¶29} A foundational principle of equity is that the person petitioning for relief must come to the court with clean hands. *Morgan, supra*, at ¶ 53; *Jerko, supra*, at 635. The larger context of this situation—the substance of this action— shows that the Grants are not coming to the court blameless. The underlying issues in this case prevent us from finding it equitable to intervene and release them from the express obligations of the lease. Thus, having considered the equities, we decline to overturn the ruling of the trial court. For these reasons, the Grants' second assignment of error is overruled.

*Conclusion*

{¶30} Having found no error prejudicial to the appellants in the particulars assigned and argued, the judgment of the Municipal Court of Findlay, Ohio is affirmed.

*Judgment Affirmed*

**PRESTON, P.J. and ZIMMERMAN, J., concur.**

**/hls**

-20-