[Cite as *Dayton Metro. Hous. Auth. v. Kilgore*, 194 Ohio App.3d 767, 2011-Ohio-3283.]

IN THE COURT OF APPEALS OF MONTGOMERY COUNTY, OHIO

DAYTON METROPOLITAN        :
HOUSING AUTHORITY,
        Appellant,                :       C.A. CASE NO. 24250

v.                                  :       T.C. CASE NO. 2010-CVG-1435

                                  :       (Civil Appeal from
KILGORE,                      Municipal Court)
        Appellee.               :

· · · · · · · · ·

**O P I N I O N**

**Rendered on the 30th day of June, 2011.**

· · · · · · · · ·

Christopher C. Green, for appellant.

Debra A. Lavey and Kelli A. Bartlett, for appellee.

· · · · · · · · ·

GRADY, Presiding Judge.

{¶ 1} This is an appeal from a final order of the Dayton Municipal Court, entered in an action for forcible entry and detainer.

{¶ 2} Defendant-appellee, Rhonda Kilgore, is a tenant of a public housing facility owned and operated by plaintiff-appellant, Dayton Metropolitan Housing Authority ("DMHA"). Section XII(s)(1) of Kilgore's lease obligates her to "refrain from engaging in * * * any criminal activity that threatens the health, safety or right of peaceful enjoyment of DMHA's public housing premises by other residents or employees of DMHA." The

following notice is attached to that prohibition:

{¶ 3} "NOTICE: CRIMINAL ACTIVITY and or crimes of violence are serious violations of the terms of this lease when a Tenant, member of his household, his *guest or any other person under Tenant's control* engages in any criminal activity that threatens the health, safety or right to peaceful enjoyment of DMHA's premises by other tenants or employees of DMHA, or engages in *any drug-related criminal activity* or crime of violence *on or off DMHA's premises*." (Emphasis added.)

{¶ 4} Section XVII of the lease governs its termination. Paragraph (a) of that section states:

{¶ 5} "This lease may be terminated only for serious or repeated violations of material terms of the Lease, such as failure to make payments due under the Lease *or to fulfill Tenant obligations set forth in Section XII above*, failure to abide by any adopted policies, failure to comply with community service requirements, making false or fraudulent statements in regards to eligibility or income, and for other good cause." (Emphasis added.)

{¶ 6} Paragraph (c) of Section XVII of the lease governs procedures for termination of the tenancy. It provides for a notice of termination and a grievance hearing in certain circumstances.

{¶ 7} On March 11, 2010, DMHA commenced an action in forcible entry and detainer against Kilgore in Dayton Municipal Court. DMHA sought restitution of the premises and monetary award for damage to the premises for which Kilgore allegedly was responsible. Concerning its claim for restitution of the premises, DMHA's complaint alleged that on February 18, 2010, Dayton Police officers who were dispatched to Kilgore's unit on reports of

drug activity "located 1.2 grams of marijuana in a soap box on top of the microwave oven and a digital scale with cocaine residue on it in a trash can." DMHA alleged that as a result, Kilgore violated Section XII(s)(2) of the lease, and that Kilgore had been served with a notice of termination.

{¶ 8} A copy of the notice of termination attached to DMHA's complaint states that Kilgore is not entitled to a grievance hearing because the "violations involve criminal and/or activity that threatens the health and safety of the premises," and that "[t]he judicial eviction procedure used by DMHA shall be under the provisions of Ohio Revised Code 1923.04 * * *."

{¶ 9} DMHA's claim for restitution of the premises was referred to a magistrate. A hearing was conducted in which Kilgore testified that she was unaware of the drug activities alleged in DMHA's complaint and that the conditions and circumstances alleged involved the conduct of two persons she had allowed into her apartment to clean while she went to a doctor's appointment. It was also established that Kilgore had cooperated in allowing the search of her apartment performed by police. Kilgore was not charged with a criminal offense.

{¶ 10} The magistrate filed a written decision. The magistrate credited Kilgore's testimony that she had no knowledge of the criminal activities alleged in DMHA's complaint and on that basis, found that she had not breached her lease agreement. The decision rendered judgment for Kilgore on DMHA's claim for restitution of the premises.

{¶ 11} DMHA filed objections to the magistrate's decision. The trial court overruled the objections and adopted the decision as the court's order. The court wrote:

{¶ 12} "The Court does not find Plaintiff's Objections well taken. While a public housing authority can evict a tenant for drug-related crimes committed by her guests, even if the tenant has no knowledge of them, eviction should be a last resort. Following *Dept. of Hous. & Urban Dev. v. Rucker* (2002), 535 U.S. 125, 152 L.Ed.2d 258, 122 S.Ct. 1230, the Secretary of Housing and Urban Development issued two letters advising public housing authority directors that they should consider several factors before evicting a tenant: the seriousness of the violation, the effect of eviction on household members unconnected with the violation, and the willingness of the head of household to remove those who committed the criminal activity from the lease. (Defendant's Appendix B and C). Following *Rucker*, trial courts still have the discretion to rule in favor of an innocent tenant on an eviction action. *CMHA v. Harris* (2006), 139 Ohio Misc.2d 96, paragraph 12.

{¶ 13} "Here, the Magistrate was presented with evidence of an innocent tenant, who did not know about and was not present during the drug-related activity or connected with it; the parties responsible for the drug activity were temporary guests not on the tenant's lease and the tenant was willing to never have those guests in her apartment again; and Defendant would suffer if she lost her public housing. The Magistrate properly denied restitution."

{¶ 14} DMHA filed a notice of appeal from the trial court's final judgment.

ASSIGNMENT OF ERROR

{¶ 15} "The trial court erred when it held that the defendant did not breach her lease when she had no knowledge of the criminal activity caused by the defendant's guests even when it was proven that her guests committed criminal drug activity in the defendant's unit."

{¶ 16} The condition in Section XII(s)(1) of Kilgore's lease prohibiting a tenant or any

other person under the tenant's control from engaging "in any drug-related criminal activity * * * on * * * DMHA's premises" is a requirement imposed by Section 1437d(l)(6), Title 42, U.S. Code. It provides that each "public housing agency shall utilize leases * * * provid[ing] that * * * any drug related criminal activities on [federally assisted low income housing] premises, engaged in by a public housing tenant * * * or any guest or other person under the tenant's control, shall be cause of termination of the tenancy."

{¶ 17} In *Rucker,* 535 U.S. 125, the Supreme Court held that an innocent-tenant defense cannot prevail against a claim for restitution of the premises following a public housing agency's termination of a tenant's lease for the causes a claim required by Section 1437d(l)(6), Title 42, U.S.Code involves. The Supreme Court pointed out that HUD regulations implementing the law provide that in deciding to terminate the tenancy, the public-housing agency has discretion to "consider all of the circumstances of the case," including those drug-related situations in which "[t]he tenant did not know, could not foresee, or could not control behavior by other occupants of the unit." Id. at 129. Nevertheless, "Congress' decision not to impose any qualification in the statute, combined with its use of the term 'any' to modify 'drug-related criminal activity,' precludes any knowledge requirement * * * Thus, *any* drug-related activity engaged in by the specified persons is grounds for termination, not just drug-related activity that the tenant knew, or should have known, about." Id. at 130-131.

{¶ 18} *Rucker* also pointed out that "by 'control,' the statute means control in the sense that the tenant has permitted access to the premises." Id. at 131. "Thus, the plain language of § 1437d(l)(6) requires leases that grant public housing authorities the discretion to

terminate tenancy without regard to the tenant's knowledge of the drug-related criminal activity." Id. By conferring discretion to terminate on the public housing authority, the statute "entrusts that decision to the local public housing authorities, who are in the best position to take account of, among other things, the degree to which the housing project suffers from 'rampant drug-related or violent crime,'' the seriousness of the offending action,' and 'the extent to which the leaseholder has * * * taken all reasonable steps to mitigate the offending action.' " Id. at 134, which reflect the purposes of the legislation. Because tenants who cannot control drug-related activity by those whom they invite into their premises "threaten the health or safety of other residents * * * it was reasonable for Congress to permit no-fault evictions in order to 'provide public other federally assisted low-income housing that is decent, safe, and free from illegal drugs.' " Id.

{¶ 19} Finally, *Rucker* held that the public housing agency's decision to terminate a tenancy and seek eviction of the tenant is not subject to due-process requirements, because the agency is not acting as a sovereign, attempting to criminally punish or civilly regulate tenants as members of the general populace. The agency "is instead acting as a landlord of property that it owns, invoking a clause in a lease to which (tenants) have agreed and which Congress has expressly required." Id., 535 U.S. at 135. Any deprivations of the tenant's rights in his tenancy will occur in state-court eviction proceedings, and "[a]ny individual factual disputes about whether the lease provision was actually violated can, of course, be resolved in these proceedings." Id. at 136.

{¶ 20} R.C. 1923.02(A)(9) authorizes actions in forcible entry and detainer "[a]gainst tenants who have breached an obligation imposed upon them by a written rental agreement."

R.C. 1923.09(A) provides that if after a hearing, "the judge concludes that the complaint is not true, the judge shall enter judgment against the plaintiff for costs. If the judge finds the complaint to be true, the judge shall render a general judgment against the defendant, in favor of the plaintiff, for restitution of the premises and costs of suit."

{¶ 21} The written rental agreement between DMHA and Kilgore provides that Kilgore must refrain from engaging in "criminal activity," which occurs when the tenant or a "person under the tenant's control * * * engages in any drug-related criminal activity * * *." The lease further authorizes DMHA to terminate Kilgore's tenancy for "serious violations," which include failure to fulfill the tenant's obligation to refrain from engaging in criminal activity.

{¶ 22} The action DMHA brought was not to terminate Kilgore's tenancy. By exercising its right in the lease to terminate Kilgore's tenancy, DMHA extinguished that tenancy. DMHA's action was brought to recover possession of the premises. *Rucker* held that the innocent-tenant defense is unavailable to a tenant in an eviction action, as a matter of law. The trial court nevertheless considered Kilgore's innocence in granting her equitable relief from DMHA's right of possession, relying on *Cuyahoga Metro. Hous. Auth. v. Harris*, 139 Ohio Misc.2d 96, 2006-Ohio-6918.

{¶ 23} In *Harris*, a public-housing agency terminated the lease of a tenant following the arrest of a guest in her apartment on a federal warrant. A search incident to the arrest revealed a rock of crack cocaine in the guest's pocket. The tenant was unaware that her guest had drugs in his pocket. In an action for forcible entry and detainer brought by the agency, the municipal court held that while the agency has discretion to terminate the lease, per

*Rucker*, courts nevertheless may weigh all equitable considerations in determining whether a forfeiture is to be declared. The court held that because the tenant was innocent and had cooperated with police, "[t]o permit eviction of Harris * * * would be to hold that public-housing tenants can have no guests or, equally implausible, to hold that public-housing tenants must conduct a thorough search of each guest every time guests enter (the agency's) property. This court is not prepared to make such a holding." Id. at ¶ 13. The court entered judgment for the tenant on a finding that "equity prohibits her eviction from the premises." Id. at ¶ 14.

{¶ 24} Equity functions to supplement the law where it is insufficient. American Jurisprudence 2d, Equity, Section 1. We have held that it is the responsibility of the court to weigh the equitable considerations before imposing a forfeiture. *Gorsuch Homes, Inc. v. Wooten* (1992), 73 Ohio App.3d 426. "Even where a cause of forfeiture is specifically mentioned in the lease, equitable considerations enter into the determination of such forfeiture and may relieve the lessee technically subject to forfeiture." 41 Ohio Jurisprudence 3d, Equity, Section 36.

{¶ 25} "The maxim, 'equity regards substance rather than form,' under which relief is granted against penalties and forfeitures and affirmative relief in aid of them is denied, does not apply to positive statutes, but only to conventional acts of parties. With respect to an act of the legislature, the maxim 'equity follows the law' governs the attitude of the court." Id. at Section 36. Positive statutes govern courts in the exercise of their equity jurisdiction, just as in matters of law, and courts are not at liberty to apply an equitable interpretation of such statutes in order to avoid a seemingly undesirable result. Id. at Section 60.

{¶ 26} Section 1437d(l)(6), Title 42, U.S.Code, imposes an obligation on federally funded public-housing agencies to include in their leases a right of termination if the tenant engages in any drug-related criminal activities. In neither the present case nor in *Harris* did the trial court impose an equitable bar to that statutory requirement. Rather, the court applied equitable considerations to prohibit the agency from exercising its right of termination when the tenant is actually innocent of the drug-related criminal activity concerned.

{¶ 27} An agency's exercise of its right of termination in a circumstance of this kind is not the mere conventional act of a landlord, such as termination for unpaid rent or damage to the property. See *Gorsuch Homes, Inc.,* 73 Ohio App.3d 426. Rather, the agency is acting on the authority Congress entrusted to it because, per *Rucker*, the agency is in "the best position to take account of, among other things, the degree to which the housing project suffers from 'rampant drug-related or violent crime,' 'the seriousness of the offending action,' and 'the extent to which the leaseholder has * * * taken all reasonable steps to mitigate the offending action.' " 535 U.S. at 134. By relying on the innocent-tenant defense, except as the agency has applied it, courts run the risk of preventing operation of the enforcement mechanism for which the statute provides, undermining the policy. That outcome would be inconsistent with the obligation of equity to follow the law.

{¶ 28} In *Harris*, the tenant was not only actually innocent of the drug-related activity that occurred, there was also no way she reasonably could have known that her guest had cocaine in his pocket. Therefore, the tenant took all reasonable steps to mitigate the offending action, as the trial court found. Neither had the tenant done anything that furthered her guest's criminal purposes, which were not particular to the apartment unit where they

occurred.

{¶ 29} In the present case, Kilgore was likewise actually innocent of the drug-related criminal activity of her two guests, and they apparently concealed from her their plans to engage in it. However, by making her apartment open and available to them as she did, Kilgore furthered her guests' criminal purposes to use that location to engage in drug-related activity. The federal statute makes no exception for inadvertence in relation to its purpose of protecting residents of federally financed housing from drug-related criminal activity. The result may appear draconian, but *Rucker* observed that "[s]trict liability maximizes deterrence and eases enforcement difficulties." 535 U.S. at 134.

{¶ 30} We hold that the trial court abused its discretion when it granted judgment for Kilgore in the action for forcible entry and detainer that DMHA commenced. The assignment of error is sustained. The cause is remanded to the trial court for further proceedings on DMHA's claims for relief.

Judgment reversed

and cause remanded.

HALL, J., concurs.

FAIN, J., dissents.

FAIN, Judge, dissenting.

{¶ 31} Although the issue is close, I would affirm the judgment of the trial court.

{¶ 32} To begin with, I conclude that Section 1437d, Title 42, U.S.Code, is not intended to displace state law governing the relations between landlords and tenants.

{¶ 33} The United States Supreme Court held as follows in *Dept. of Hous. & Urban Dev. v. Rucker* (2002), 535 U.S. 125, 122 S.Ct. 1230, 152 L.Ed.2d 258:

{¶ 34} "Section 1437d(*l*)(6) requires lease terms that give local public housing authorities the discretion to terminate the lease of a tenant when a member of the household or a guest engages in drug-related activity, regardless of whether the tenant knew, or should have known, of the drug-related activity."   Id. at 136.

{¶ 35} Significantly, in rejecting due-process concerns that had troubled the Ninth Circuit Court of Appeals, the Supreme Court opined:

{¶ 36} "The en banc Court of Appeals held that HUD's interpretation 'raise[s] serious questions under the Due Process Clause of the Fourteenth Amendment,' because it permits 'tenants to be deprived of their property interest without any relationship to individual wrongdoing.' [Citations omitted.] But both of these cases deal with the acts of government as sovereign. * * * The situation in the present cases is entirely different.   The government is not attempting to criminally punish or civilly regulate respondents as members of the general populace.   *It is instead acting as a landlord of property that it owns, invoking a clause in a lease to which respondents have agreed and which Congress has expressly required.*" (Emphasis added.)   Id., 535 U.S. at 135, 122 S.Ct. 1236.

{¶ 37} Consistently with this statement that in administering public housing, the federal government is acting as landlord, not as a sovereign, the very next paragraph in the opinion in *Rucker* continues:

{¶ 38} "The Court of Appeals sought to bolster its discussion of constitutional doubt by pointing to the fact that respondents have a property interest in their leasehold interest,

citing *Greene v. Lindsey*, 456 U.S. 444, 102 S.Ct. 1874, 72 L.Ed.2d 249 (1982). This is undoubtedly true, and *Greene* held that an effort to deprive a tenant of such a right without proper notice violated the Due Process Clause of the Fourteenth Amendment. But, in the present cases, such deprivation will occur in the state court where [the public-housing authority] brought the unlawful detainer action against respondents. There is no indication that notice has not been given by [the public-housing authority] in the past, or that it will not be given in the future. Any individual factual disputes about whether the lease provision was actually violated can, of course, be resolved in these proceedings. [Footnote omitted]." Id., 535 U.S. at 135-136, 122 S.Ct. 1236.

{¶ 39} From the two paragraphs in *Rucker* quoted above, I conclude that Section 1437d, Title 42, U.S.Code, the statute upon which DMHA relies, is intended to govern the administration of public-housing leases by public-housing authorities, as landlords, not to displace state law governing the legal relations between landlords and tenants.

{¶ 40} Next, I conclude that the trial court properly weighed the equities and found that they weighed against the equitable remedy of eviction in this case, which work a forfeiture of Kilgore's housing subsidy. Equity abhors a forfeiture. *Manhattan Life Ins. Co. v. Smith* (1886), 44 Ohio St. 156, 167; *Stephenson v. Haines* (1866), 16 Ohio St. 478, 487. When a tenant raises equitable defenses, a court must balance the equities to determine whether a forfeiture of the lease is warranted. *S. Hotel Co. v. Miscott, Inc.* (1975), 44 Ohio App.2d 217, 221. This is especially so where, as in the case before us, the breach of the lease has been cured. Id. See also *Gorsuch Homes, Inc. v. Wooten* (1992), 73 Ohio App.3d 426.

{¶ 41} DMHA argues that the trial court did not weigh the equities, but instead

decided, inconsistently with *HUD v. Rucker*, that a tenant's lack of knowledge of her guests' drug-related activities is an absolute defense to eviction for that reason.

{¶ 42} The magistrate's decision would provide support for DMHA's argument in this regard. But the trial court, in overruling DMHA's objection to the magistrate's decision, took a different tack:

{¶ 43} "[DMHA] claims that the Magistrate should have granted restitution because it was established that [Kilgore] was in violation of her DMHA lease.

{¶ 44} "In Response, [Kilgore] claims that restitution should not have been granted because she was not in her apartment at the time of the drug-related incident, she had no knowledge of any drug activity, and she did not act maliciously or willfully. [Kilgore] argues that the *Rucker* Court held that 42 USC §1437d vests the public housing authority with the discretion not to terminate the tenancy of an innocent tenant and following *Rucker*, the Secretary of HUD urged public housing authorities to be guided by compassion and common sense in responding to illegal drugs and to only use eviction as a last option. (Defendant's Appendix B and C). [Kilgore] maintains that the Dayton Municipal Court has held that a DMHA tenant, with no previous knowledge of drug-related activity of guests, was not in breach of the tenant's DMHA lease. *DMHA v. Baldwin* (Dec. 15, 2005), D.M.C. No. 05CVG1338. (The Court held that Baldwin did not act maliciously or willfully, in that she had no knowledge of the criminal activity, and she had a substantial interest in her public housing subsidy and would suffer extreme hardship if evicted.)

{¶ 45} "The Court has reviewed the record, the Transcript and evidence, and the law and agrees with the Magistrate that [DMHA] should not be granted restitution. The

testimony from the Transcript indicated that [Kilgore] had the guests in her apartment from the night before when they cleaned for her, she was going to take them home after her appointment because she was running late, she was at her appointment and was not in her apartment when the police discovered the guests and the drug-related activity, she did not know her guests were involved with drugs, and the guests would never be welcome back because of the drugs and items they carried into her apartment.

{¶ 46} "The Court does not find [DMHA]'s Objections well taken. While a public housing authority can evict a tenant for drug-related crimes committed by her guests, even if the tenant has no knowledge of them, eviction should be a last resort. Following *Rucker*, the Secretary of Housing and Urban Development issued two letters advising public housing authority directors that they should consider several factors before evicting a tenant: the seriousness of the violation, the effect of eviction on household members unconnected with the violation, and the willingness of the head of household to remove those who committed the criminal activity from the lease. (Defendant's Appendix B and C.) Following *Rucker*, trial courts still have the discretion to rule in favor of an innocent tenant on an eviction action. *CMHA v. Harris* (2006), 139 Ohio Misc.2d 96, paragraph 12.

{¶ 47} "Here, the Magistrate was presented with evidence of an innocent tenant, who did not know about and was not present during the drug-related activity or connected with it; the parties responsible for the drug activity were temporary guests not on the tenant's lease and the tenant was willing to never have those guests in her apartment again; and [Kilgore] would suffer if she lost her public housing. The Magistrate properly denied restitution."

{¶ 48} Although the trial court never expressly declared in its decision that it was

weighing the equities, reading its decision persuades me that this was exactly what it was doing. And I conclude that the trial court did not abuse its discretion by concluding that the equities weighed in Kilgore's favor.

{¶ 49} I would overrule DMHA's sole assignment of error, and affirm the judgment of the trial court.