[Cite as *Cuyahoga Metro. Hous. Auth. v. Davis*, 197 Ohio App.3d 411, 2011-Ohio-6162.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 96477**

# CUYAHOGA METROPOLITAN HOUSING AUTHORITY,

APPELLEE,

v.

# DAVIS,

APPELLANT.

## JUDGMENT:
## AFFIRMED

Civil Appeal from the
Cleveland Municipal Court
Housing Division
Case No. 2010 CVG 010390

**BEFORE:** Boyle, J., Stewart, P.J., and Celebrezze, J.

**RELEASED AND JOURNALIZED:** December 1, 2011

**ATTORNEYS:**

Michael P. McGuire, for appellee.

Sam A. Zingale, for appellant.

MARY J. BOYLE, Judge.

{¶ 1}   Defendant-appellant, Lawanda Davis, appeals from the trial court's order granting restitution of the premises to Cuyahoga Metropolitan Housing Authority ("CMHA") on its forcible-entry-and-detainer action.  She raises two assignments of error for our review:

{¶ 2}   "[1] The trial court erred in granting Plaintiff-Appellee Cuyahoga Metropolitan Housing Authority's ("CMHA") request to evict Davis from her apartment solely on the basis that persons in her apartment possessed small quantities of marijuana, and where, in one instance, Davis did not authorize the individual possessing the drug to be present in her apartment.

{¶ 3}   "[2] The trial court erred in evicting Davis based on conduct of persons in her apartment when she had no knowledge whatsoever that those individuals had small quantities of marijuana in their possession."

{¶ 4}   Finding no merit to her appeal, we affirm.

Procedural History and Factual Background

{¶ 5}   In June 2010, CMHA filed a forcible-entry-and-detainer action against Davis, a tenant of a public-housing facility owned and operated by CMHA.  It sought restitution of the premises, alleging, among other things, that Davis violated the terms of her lease and federal law by engaging in drug-related or criminal activity.

{¶ 6}   A hearing was held before a magistrate.  CMHA police officer Ryan Allen wrote a report regarding an incident that occurred in Davis's apartment on November 13, 2009.  He testified that CMHA officers saw a male standing outside Davis's apartment.  The male, later identified to be Jacquez Lawson, "tried to get away" from the officers and ran into the apartment

building. Three officers chased Lawson up the stairs to Davis's apartment on the third floor. They saw Lawson go into Davis's apartment and try to jump off her balcony. But when Lawson saw Officer Ryan standing outside Davis's apartment, he ran back inside and hid in a closet. Officer Ryan testified that when officers knocked on Davis's door, Davis lied to them and told them that Lawson was not in her apartment. But Davis consented to the officers' search of her apartment, and they found Lawson hiding in a closet; he had marijuana in his pocket.

{¶ 7} Scott Drew, also a police officer for CMHA, testified that he wrote the report regarding an incident that occurred in Davis's apartment on November 15, 2009. He explained that officers went to Davis's apartment to follow up the November 13 incident. He said that a young male, who was never identified, opened the door to Davis's apartment and slammed the door in their faces when he saw who it was. The unidentified male jumped out of Davis's kitchen window. Officers found an indentation in the ground where the male landed. Officer Drew said that another male, later identified to be Kaynye Smith, was sitting on Davis's couch; Smith had marijuana in his pocket. Officer Drew testified that Smith said he was friends with Davis. Davis came home about five minutes later and became belligerent with the officers.

{¶ 8} Davis testified that on November 13, 2009, Lawson knocked on her door and she let him in her apartment. She said that she knew him from the neighborhood. Davis said that Lawson asked her, "Lawanda, what you doin'?" She replied, "Nothing." He then asked her if he could "sit down with [her] real quick." She told him that he could. She did not know he was running from the police. Davis testified that she did not lie to police and tell them that Lawson was not in her apartment. She said, "I listened to the police. I was like, '[h]e is right there.'" She further stated, "I told the police officer exactly where Jacquez Lawson was."

{¶ 9} As for the incident on November 15, 2009, Davis testified that she knew Smith from the neighborhood as well. She said that Smith asked her if he could lie on her couch and she told him yes. She explained that she was at a party across the hall and that is how she saw the police were at her apartment.

{¶ 10} After a hearing, the magistrate found in favor of CMHA, concluding that Davis violated R.C. 5321.05(A)(9). Specifically, the magistrate found that illegal drug activity occurred on the premises on November 13 and November 15, 2009, and that Davis permitted the suspects access to her apartment or that they were her guests.

{¶ 11} Davis filed objections to the magistrate's decision. The trial court overruled Davis's objections, modified the magistrate's decision, found in favor of CMHA, and granted it restitution of the premises. The trial court explained that it modified the magistrate's decision to "indicate the basis upon which judgment is granted is the defendant's violation of R.C. 5321.05, 24 CFR §966.4(f)(12), and her lease, permitting drug activity at the premises." It is from this judgment that Davis appeals.

{¶ 12} We will address Davis's assignments of error simultaneously as they both address whether the trial court erred when it granted CMHA a writ of restitution based on the drug activity of other persons.

### Standard of Review

{¶ 13} In both of her assignments of error, Davis argues that the trial court erred in granting CMHA the right to evict her because CMHA failed to meet its burden of establishing that it had a right to do so. Although Davis claims that her appeal is a matter of statutory interpretation, Davis is actually claiming that the trial court's judgment was against the manifest weight of the evidence. "[W]here an appellant challenges a trial court's judgment in a civil

action as being against the manifest weight of the evidence, the function of the appellate court is limited to an examination of the record to determine if there is any competent, credible evidence to support the underlying judgment." *Lee v. Mendel* (Aug. 24, 1999), 10th Dist. No. 98AP-1404. "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 461 N.E.2d 1273.

### Innocent-Tenant Defense

{¶ 14} Davis maintains that because she did not know that the two males who were in her apartment on two separate occasions had marijuana on their persons, the "result reached by the trial court * * * ordering [her] eviction [was] neither just nor reasonable." Davis focuses her argument solely on the magistrate's decision finding that she violated R.C. 5321.05(A)(9). But the trial court modified the magistrate's decision to clarify that it found that she violated not only R.C. 5321.05(A)(9), but also the terms of her lease and federal law.

{¶ 15} Section 1437d(l)(6), Title 42, U.S.Code requires "[e]ach public housing agency [to] utilize leases which * * * provide that any criminal activity that threatens the health, safety, or right to peaceful enjoyment of the premises by other tenants or any drug-related criminal activity on or off such premises, engaged in by a public housing tenant, any member of the tenant's household, or any guest or other person under the tenant's control, shall be cause for termination of tenancy." As required, Davis signed a lease that contained such a provision.

{¶ 16} In Section 966.4(f)(12), Title 24, C.F.R., the United States Department of Housing and Urban Development ("HUD") regulations provide that a tenant of public housing has obligations:

{¶ 17} "(i) To assure that no tenant, member of the tenant's household, or guest engages in:

{¶ 18} "(A) Any criminal activity that threatens the health, safety or right to peaceful enjoyment of the premises by other residents; or

{¶ 19} "(B) Any drug-related criminal activity on or off the premises;

{¶ 20} "(ii) To assure that no other person under the tenant's control engages in:

{¶ 21} "(A) Any criminal activity that threatens the health, safety or right to peaceful enjoyment of the premises by other residents; or

{¶ 22} "(B) Any drug-related criminal activity on the premises."

{¶ 23} Ohio law provides a similar requirement on all tenants: "[A] tenant who is a party to a rental agreement shall * * * [c]onduct himself, and require persons in his household and persons on the premises with his consent to conduct themselves, in connection with the premises so as not to violate the prohibitions contained in Chapters 2925. and 3719. of the Revised Code, or in municipal ordinances that are substantially similar to any section in either of those chapters, which relate to controlled substances." R.C. 5321.05(A)(9).

{¶ 24} HUD regulations further provide that a public housing agency "may terminate the tenancy only for * * * [s]erious or repeated violation of material terms of the lease, such as * * * [f]ailure to fulfill household obligations, as described in paragraph (f) of this section." Section 966.4(l)(2), Title 24, C.F.R.

{¶ 25} In *Dept. of Hous. & Urban Dev. v. Rucker* (2002), 535 U.S. 125, 122 S.Ct. 1230, 152 L.Ed.2d 258, the United States Supreme Court addressed these exact federal statutes and regulations, and the "so-called 'innocent' tenants" defense. Id. at 129. Public-housing tenants filed federal actions against HUD and the public-housing authority, "arguing that [Section]

7

1437d(l)(6) does not require lease terms authorizing the eviction of so-called 'innocent' tenants, and, in the alternative, that if it does, the statute is unconstitutional." Id. at 125. The United States Supreme Court disagreed and held that Section 1437d(l)(6), Title 42, U.S.Code "unambiguously requires lease terms that vest local public housing authorities with the discretion to evict tenants for the drug-related activity of household members and guests whether or not the tenant knew, or should have known, about the activity." Id. at 130.

{¶ 26} The Supreme Court reasoned:

{¶ 27} "The statute does not *require* the eviction of any tenant who violated the lease provision. Instead, it entrusts that decision to the local public housing authorities, who are in the best position to take account of, among other things, the degree to which the housing project suffers from 'rampant drug-related or violent crime,' * * * 'the seriousness of the offending action,' * * * and 'the extent to which the leaseholder has * * * taken all reasonable steps to prevent or mitigate the offending action[.]' * * * It is not 'absurd' that a local housing authority may sometimes evict a tenant who had no knowledge of the drug-related activity. Such 'no-fault' eviction is a common 'incident of tenant responsibility under normal landlord-tenant law and practice.' 56 Fed.Reg., at 51567. Strict liability maximizes deterrence and eases enforcement difficulties. See *Pacific Mut. Life Ins. Co. v. Haslip* (1991)*,* 499 U.S. 1, 14, 111 S.Ct. 1032, 113 L.Ed.2d 1." *Rucker*, 535 U.S. at 133-134.

{¶ 28} The Second District recently discussed the *Rucker* decision in *Dayton Metro. Hous. Auth. v. Kilgore*, 2d Dist. No. 24250, 2011-Ohio-3283. In *Kilgore*, the tenant had given two guests permission to enter her apartment to clean it while she was away. Police later discovered marijuana in a soap box on top of the microwave oven and a digital scale with cocaine residue on it in a trash can. The trial court denied the public-housing authority's request

8

for restitution because it found the tenant was innocent. In doing so, it relied on *Cuyahoga Metro. Hous. Auth. v. Harris*, 139 Ohio Misc.2d 96, 2006-Ohio-6918, 861 N.E.2d 179.

{¶ 29} In *Harris*, CMHA terminated the lease of a tenant following the arrest of a guest in her apartment who had crack cocaine in his pocket. The tenant was unaware that the guest had drugs in his pocket. In an action for forcible entry and detainer brought by CMHA, the trial court held that while the agency has discretion to terminate the lease, under *Rucker*, courts nevertheless may weigh all equitable considerations in determining whether a forfeiture is to be declared. The court found that because the tenant was innocent and had cooperated with police, "[t]o permit the eviction of Harris under these circumstances would be to hold that public-housing tenants can have no guests or, equally implausible, to hold that public-housing tenants must conduct a thorough search of each guest every time guests enter (the agency's) property. This court is not prepared to make such a holding." Id. at ¶ 13. The court entered judgment for the tenant on a finding that "equity prohibits her eviction from the premises." Id. at ¶ 14.

{¶ 30} But the Second District reversed the trial court's judgment in *Kilgore*, relying on *Rucker*. It distinguished *Harris* on the facts, explaining:

{¶ 31} "In *Harris*, the tenant was not only actually innocent of the drug-related activity that occurred, there was also no way she reasonably could have known that her guest had cocaine in his pocket. Therefore, the tenant took all reasonable steps to mitigate the offending action, as the trial court found. Neither had the tenant done anything that furthered her guest's criminal purposes, which were not particular to the apartment unit where they occurred." *Kilgore,* 2011-Ohio-3283 at ¶ 28.

{¶ 32} The Second District continued: "In the present case, Kilgore was likewise actually innocent of the drug-related criminal activity of her two guests, and they apparently

concealed from her their plans to engage in it. However, by making her apartment open and available to them as she did, Kilgore furthered her guests' criminal purposes to use that location to engage in drug-related activity. The federal statute makes no exception for inadvertence in relation to its purpose of protecting residents of federally financed housing from drug-related criminal activity. The result may appear draconian, but *Rucker* observed that '[s]trict liability maximizes deterrence and eases enforcement difficulties.' [*Rucker*,] 535 U.S. at 134." Id. at ¶ 29.

**{¶ 33}** We find the facts in the present case more akin to *Kilgore* than *Harris*. Here, with respect to the first incident, a CMHA police officer testified that Davis lied to officers, telling them that Lawson was not in her apartment. Although Davis testified that she did not lie to police, the magistrate clearly believed the officers. When assessing witness credibility, "[t]he choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact." *State v. Awan* (1986), 22 Ohio St.3d 120, 123, 489 N.E.2d 277.

**{¶ 34}** As for the second incident, two days after the first, Davis permitted two men to use her apartment while she went to a party across the hall. Although she testified that she merely knew Smith from the neighborhood, she obviously knew him well enough to permit him access to her apartment to lie on her couch while she was not there. And actually, another man was also in Davis's apartment when police knocked on her door that day. This other man jumped out Davis's three-story window to get away from police. One could reasonably presume that this male also had some kind of illegal contraband on his person as well.

**{¶ 35}** After reviewing the record, we conclude the trial court had competent, credible evidence before it to grant CMHA restitution of the premises.

**{¶ 36}** Davis's two assignments of error are overruled.

Judgment affirmed.

STEWART, P.J., and CELEBREZZE, J., concur.