[Cite as *Barcus First Richland Morrow Cty. v. Vassel*, 2017-Ohio-7142.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
| | : | JUDGES: |
| BARCUS FIRST RICHLAND | : | Hon. W. Scott Gwin, P.J. |
| MORROW COUNTY | : | Hon. John W. Wise, J. |
| | : | Hon. Craig R. Baldwin, J. |
| Plaintiff-Appellee | : | |
| | : | |
| -vs- | : | Case No. 17CA09 |
| | : | |
| ANGIE VASSEL, ET AL | : | |
| | : | O P I N I O N |
| Defendant-Appellant | | |

CHARACTER OF PROCEEDING:     Civil appeal from the Mansfield Municipal
                             Court, Case No. 2016-CVG-002291

JUDGMENT:                    Affirmed

DATE OF JUDGMENT ENTRY:      August 4, 2017

APPEARANCES:

For Plaintiff-Appellee                For Defendant-Appellant

COLLIN SHOWE                          ROBERT GOLDBERGER
Willis Law Firm, LLC                  10 West Newlon Place
141 East Town Street                  Mansfield, OH 44902
Suite 200
Columbus, OH 43215

*Gwin, P.J.*

{¶1} Appellant appeals the decision of the Mansfield Municipal Court granting appellee possession of the premises and a writ of restitution.

*Facts & Procedural History*

{¶2} On October 25, 2016, appellee Barcus First Richland Morrow County dba Mansfield Manor, Inc. filed a complaint in forcible entry and detainer against appellant Angie Vassel with regards to the premises located at 260 East Cook Road, Apartment 212, in Mansfield, Ohio. The complaint alleged that as of October 3, 2016, appellant had not paid appellee the money owed for damages and therefore was in violation of her lease agreement. The complaint further alleged: appellee fully performed all its obligations under the lease; appellant is in default of the lease; appellee is entitled to immediate possession of the premises; and appellee gave appellant notice as required by R.C. 1923.04 to vacate the premises. Appellee sought a judgment for immediate restitution of the premises.

{¶3} The trial court held a trial on appellee's complaint on November 16, 2016. Michael Andrews ("Andrews") is the senior property manager on-site for appellee at the Allison Manor property, where the premises at issue is located. Allison Manor is a residential apartment building funded by the United States Department of Housing and Urban Development ("HUD"). In order to live in Allison Manor, someone has to be disabled. Andrews identified Exhibit A as the HUD lease provided to appellant when she moved into Allison Manor. Appellant executed the lease on April 4, 2014. Andrews testified appellant still lives at Allison Manor in Unit 212.

{¶4} Andrews stated the building has a single entrance with an electric door opener to assist tenants. They are required to maintain an electronic door opener pursuant to HUD rules to assist disabled tenants in entering and exiting the building. Andrews identified Exhibit B as the invoice from Bob and Bob Door Company for repairs on the entry door to Allison Manor after it was damaged by appellant. Andrews stated the invoice totaled $1,737.50 and was for the amount to repair the motor on the door. Andrews testified Exhibit C is a photograph of the mechanism that opens the door.

{¶5} Andrews identified Exhibit E as a letter he sent to appellant on June 8, 2016, notifying her she had been charged the cost of repairing the entrance door and had three days to make the payment or to make arrangements for a payment plan. Andrews listed the amount due and owing as $1,737.50, the same amount as the invoice in Exhibit B. Andrews testified appellant did not contact him, so he provided her with Exhibit F, a forbearance agreement whereby appellant could either repay the amount to repair the door or vacate the premises by a certain date.

{¶6} After appellant did not contact him, Andrews sent her Exhibit G, a letter stating she failed to make any payments or payment arrangements towards the outstanding damage charges which resulted from her damaging the front entrance door and stating enclosed was a ten-day notice to vacate the apartment. Andrews testified he served appellant with this letter and ten-day notice by both regular mail and by affixing it to her door on October 3, 2016. Andrews testified appellee last accepted rent from appellant in July of 2016.

{¶7} Velva Rush ("Rush") has been a resident of Allison Manor for nine years. She testified that she is familiar with appellant. Rush stated she saw appellant prop open

the door with the electric motor in it once, sometime between April and June. Rush personally observed appellant prop the door open by using a screw or a bolt. Rush took the object off the floor, as it was on the floor propping the door open so it would not close. Rush saw appellant put the object there. Rush had seen the object before in appellant's apartment when they were putting together a television stand. Rush gave the object to the maintenance man.

{¶8}  Rush identified Exhibit H as a letter she wrote containing the object and stating, "This is what Angie Vassel put in the door to prop it open. I saw her put it there. She went and got Eddie to see if he could fix the door so no one would know." Rush testified when the door was propped open, she could hear the motor trying to shut the door because it kept going until the door is shut. On cross-examination, Rush denied having animosity towards appellant, but testified appellant does have animosity towards her.

{¶9}  Wilma Phillips ("Phillips"), a resident at Allison Manor for approximately six years, testified she is familiar with appellant and saw her prop open the main door a total of three times, one in May of 2016. Phillips saw appellant prop the door open with a rock and, when the door would not close, it buzzed. Phillips testified Exhibit H contains a letter she wrote. The letter stated, "the weekend of May 21, 2016, Angie propped open the door in the front entrance open slightly when she took her dog out. It is bad enough she keeps the door from latching and harms the system, but it is also taking away from our safety and security from allowing anyone to just walk into the building." Phillips stated she recalled when the door was broken, as she and other tenants had difficulty opening the door.

{¶10} On cross-examination, Phillips testified she never saw anyone else prop open the door and she spends quite a bit of time downstairs by the door because she does not go anywhere else. When asked if she was there when "this nut appeared in the door," Phillips stated, "I wasn't there that particular with the, with the nut, no sir – I saw the rocks."

{¶11} Christopher Lambert ("Lambert") is the maintenance technician at Allison Manor. He recalls in May of 2016 the front door with the motor on it malfunctioned. Lambert testified the front door has three electrical boards, a motor, and an armature. The electrical boards tell the motor to open, to pop open the door, and open and close the door. Lambert stated if the door is jammed, it will burn the motor up because the door is constantly trying to close. Lambert testified the motor did burn up on the front door and he had to replace the motor and these are the charges appellee is asking appellant to pay for. On cross-examination, Lambert testified he is not exactly sure how long it would take to burn the motor up, but not that long.

{¶12} Jane Henry ("Henry"), a resident of Allison Manor, testified she moved in on April 30, 2016. Henry stated she has seen people prop open the door twice. She saw a mat under the door and some guys were switching out carpets and they were using a big barrel to prop open the door. Henry did not see appellant prop the door open on May 21, 2016 and testified she was not down there then.

{¶13} Appellant testified that since she moved in to Allison Manor in April of 2014, she has made numerous complaints about the conditions of the premises and has tried to get other tenants to petition management to make corrections. Appellant stated she did not prop the door open in May of 2016 or any other time. Rather, she was carrying

her puppy when she was pulling her keys out of her pocket and what was in her pocket fell out. A washer, a screw, and her keys were in her pocket. She bent down and retrieved the screw and washer. Appellant has seen maintenance workers use mats, rugs, and buckets to prop open the door at least a dozen times.

{¶14} The trial court issued a judgment entry on November 17, 2016. The trial court found: appellee is the record titleholder of the subject premises; appellant occupied the premises under a written tenancy; appellant was served with notice of termination of tenancy as required by R.C. 5321.17; appellant was served with the required notice to leave pursuant to R.C. 1923.04; appellant was served with a summons and copy of the complaint pursuant to R.C. 1923.06 and seven days have elapsed since service; and appellant failed to pay property damage and is therefore in violation of the terms of the lease. The trial court restored possession of the premises to appellee and stated a writ of restitution was to be issued, if necessary.

{¶15} On February 2, 2017, appellee filed a motion to reissue judgment and extend execution time as no written notice of the November judgment was received by appellee. The trial court granted the motion on February 2, 2017, reissuing the judgment rendered on November 16, 2016 because the judgment was never sent to the parties. A writ of restitution was issued on February 6, 2017.

{¶16} Appellant appeals the judgment entry of the Mansfield Municipal Court and assigns the following as error:

{¶17} "I. THE TRIAL COURT ERRED IN GRANTING RESTITUTION OF THE PREMISES TO APPELLANT."

I.

{¶18} The trial court conducted a bench trial in this case. In *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, the Ohio Supreme Court clarified the standard of review appellate courts should apply when assessing the manifest weight of the evidence in a civil case. The Ohio Supreme Court held the standard of review for manifest weight of the evidence for criminal cases stated in *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E. 2d 541 (1997) is also applicable in civil cases. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517. A reviewing court is to examine the entire record and determine "whether in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered." *Id.;* see also *Sheet Metal Workers Local Union No. 33 v. Sutton*, 5th Dist. Stark No. 2011 CA 00262, 2012-Ohio-3549. "In a civil case, in which the burden of persuasion is only by a preponderance of the evidence, rather than beyond a reasonable doubt, evidence must still exist on each element (sufficiency) and the evidence on each element must satisfy the burden of persuasion (weight)." *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517.

{¶19} As an appellate court, we are not fact finders; we neither weigh the evidence nor judge the credibility of witnesses. *Markel v. Wright*, 5th Dist. Coshocton No. 2013CA0004, 2013-Ohio-5274. Further, "an appellate court should not substitute its judgment for that of the trial court when there exists * * * competent and credible evidence supporting the findings of fact and conclusion of law." *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). The underlying rationale for giving deference to the findings of the trial court rests with the knowledge that the trial judge is

best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony. *Id.* Accordingly, a trial court may believe all, part, or none of the testimony of any witness who appears before it. *Rogers v. Hill*, 124 Ohio App.3d 468, 706 N.E.2d 438 (4th Dist. 1998).

{¶20} Pursuant to R.C. 1923.02(A)(9), a forcible entry and detainer proceeding can be had against "tenants who have breached an obligation imposed upon them by a written rental agreement." Thus, the statute empowers landlords to regain possession of their property upon a tenant's breach of the rental agreement. *Dennis v. Morgan*, 89 Ohio St.3d 417, 2000-Ohio-211, 732 N.E.2d 391. If, after a hearing, the judge finds the complaint to be true, the judge shall render a judgment against the defendant, in favor of the plaintiff, for restitution of the premises and costs of the suit. *Dayton Metro Housing Auth. v. Kilgore*, 194 Ohio App.3d 767, 2011-Ohio-3283, 958 N.E.2d 187 (2nd Dist.). R.C. 1923.04 requires that the landlord notify the tenant to leave the premises at least three days before bringing the action. R.C. 1923.04.

{¶21} Thus, in order to prevail on its forcible entry and detainer cause of action, appellee had to present the trial court with relevant, competent, and credible evidence that there was a valid lease agreement between the parties, appellant caused damage to the property, appellant breached the terms of the lease agreement by not repaying said damages, appellee served appellant with the statutory notice of termination, and appellant remained in the leased premises ten days after the statutory notice of termination was served.

{¶22} In this case, it is undisputed that the parties entered into a lease agreement, executed by appellant on April 4, 2014, for the premises located at 260 East Cook Road, Apartment 212 in Mansfield, Ohio.

{¶23} We find there is relevant, competent, and credible evidence to support the trial court's determination that appellant caused damage to the property. Rush testified she is familiar with appellant and personally observed her prop the door open sometime between April and June of 2016. Rush identified Exhibit H as the letter she wrote containing the object and stating it is what appellant put in the door to prop it open and Rush saw appellant put it there. Exhibit H was marked "received" on May 24, 2016. Phillips testified she is familiar with appellant and saw her prop open door three times, once in May of 2016. Phillips remembered when the door was broken, as she and other tenants had trouble getting in and out of the door. Phillips identified Exhibit H, as a letter she wrote stating, "the weekend of May 21, 2016, Angie propped open the door in the front entrance open slightly when she took her dog out."

{¶24} Lambert testified that in May of 2016, the front door with the motor on it malfunctioned when the motor burned out. Lambert stated if the door is jammed, it will burn up the motor because the door is constantly trying to close. Andrews testified Exhibit B represented the invoice for repairs on the entry door to Allison Manor after it was damaged by appellant in the amount of $1,737.50.

{¶25} Appellant points to the allegedly conflicting testimony of Phillips that she "wasn't there that particular with, with the nut, no sir --- I saw the rocks" and to the testimony of Henry that she did not see appellant prop the door open on May 21, 2016. Appellant also argues that Lambert did not know how long it took the motor to burn up.

We first note that Henry stated she did not see appellant prop the door open on May 21, 2016 because "she was not down there then." Further, though Lambert did not know exactly how long it would take to burn up the motor, he said it would be "not that long." Appellant offered no conflicting testimony as to how long it would take the motor to burn out or other possible reasons for the motor burning out and did not question Lambert on cross-examination about other possible causes for the motor burning out. As an appellate court, we do not weigh the evidence or judge the credibility of the witnesses and will not substitute our judgment for that of the trial court. The conflicting evidence presented is a matter of credibility for the trial court to determine. The trial court was free to believe all, part, or none of the testimony of the witnesses. See *Cincinnati Ins. Co. v. Evans*, 6th Dist. Wood No. WD-09-012, 2010-Ohio-2622; *Rogers v. Hill*, 124 Ohio App.3d 468, 706 N.E.2d 438 (4th Dist. 1998).

**{¶26}** We further find there was relevant, competent, and credible evidence that appellant breached the terms of the lease by not repaying damages. Andrews testified appellant executed the lease, Exhibit A, in April of 2014. Section 13(d) of the lease agreement states the tenant agrees that, "if any damages to the property shall be caused by his/her acts or neglect, the TENANT shall forthwith repair such damage at his/her own expenses, and should the TENANT fail or refuse to make such repairs within a reasonable time after the occurrence of such damage, the LANDLORD may, at his/her option, make such repairs and charge the cost thereof to the TENANT, and the TENANT shall thereupon reimburse the LANDLORD for the total cost of the damages so caused." Thus, pursuant to the lease agreement, appellant shall reimburse appellee for any property damages caused by appellant. Further, Section 13(g) of the lease states that in the event

appellant breaches any of the lease provisions, appellee is permitted to bring appropriate legal action ("to permit the LANDLORD or his/her agents to bring appropriate legal action in the event of a breach or threatened breach by the TENANT or any of the covenants or provisions of this lease").

**{¶27}** There is relevant, competent, and credible evidence that appellee served appellant with the statutory notice of termination. Andrews testified he sent appellant Exhibit G, a letter stating she failed to make any payment arrangements towards the outstanding damage charges which resulted from her damaging the front door and stating enclosed was a ten-day notice to vacate the apartment. Andrews stated he served appellant with this letter and ten-day notice by both regular mail and by affixing it to appellant's door on October 3, 2016.

**{¶28}** There is relevant, competent, and credible evidence that appellant remained in possession of the leased premises after the statutory notice of termination was served. Appellant testified that, as of November 16, 2016, she lives at 260 East Cook Road, Apartment 212 in Mansfield, Ohio. Andrews testified appellee last accepted rent from appellant in July of 2016.

{¶29} Based on the foregoing, we find there is relevant, competent, and credible evidence to support the trial court's granting restitution of the premises to appellee. Accordingly, appellant's assignment of error is overruled. The decision of the Mansfield Municipal Court is affirmed.

By Gwin, P. J.,

Wise, John, J., and

Baldwin, J., concur