[Cite as *Byrneport Apts. II v. Williams*, 2020-Ohio-3488.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

Byrneport Apartments II, an
Ohio Limited Partnership

     Appellee

v.

Kaleigh Williams

     Appellant

Court of Appeals No. L-19-1277

Trial Court No. CVG-19-13869

**DECISION AND JUDGMENT**

Decided: June 26, 2020

* * * * *

Milton E. Pommeranz, for appellee.

Kaser S. Bhatti and Alicia Kingston, for appellant.

* * * * *

**ZMUDA, P.J.**

## I. Introduction

{¶ 1} In her appeal in this forcible entry and detainer action, appellant, Kaleigh Williams, challenges the judgment of the Toledo Municipal Court, Housing Division, overruling appellant's objections to the magistrate's decision, and entering judgment in favor of Byrneport Apartments II, an Ohio Limited Partnership ("landlord").

## A. Facts and Procedural Background

{¶ 2} Pursuant to a lease agreement executed by the parties in January 2019, appellant is a tenant at an apartment facility owned by landlord located at 901 Byrneport Drive in Toledo, Ohio. Under the terms of the lease, appellant's lease is HUD-subsidized, and her portion of the monthly rent is $25, due on the first of the month.

{¶ 3} On July 12, 2019, landlord served appellant with a ten-day notice to vacate the premises due to appellant's non-payment of rent for the month of July. Subsequently, on July 30, 2019, landlord filed a complaint in forcible entry and detainer with the trial court, alleging non-payment of rent, and seeking restitution of the premises and $168.43 in delinquent rent and late charges for the period ending July 31, 2019.

{¶ 4} The matter proceeded to a hearing before a magistrate on August 23, 2019. At the hearing, appellant argued that the parties' course of conduct established a pattern of landlord accepting her rent after the first of the month. Further, appellant contended that the late fees charged by landlord were unconscionable, and that it would be inequitable to evict her and her four children from the premises.

{¶ 5} Following the hearing, the magistrate issued a decision on September 5, 2019, which was subsequently amended on September 18, 2019, in which the magistrate found that landlord proved that appellant did not timely tender her July 2019 rent. Consequently, the magistrate entered judgment in favor of landlord for possession of the premises.

2.

{¶ 6} On October 2, 2019, appellant filed objections to the magistrate's decision, arguing that the magistrate failed to consider the parties' course of conduct in rendering a decision. Specifically, appellant asserted that landlord "allowed her to repeatedly pay her rent late. [Appellant] moved into the premises in January 2018, and only once in February 2018, was the rent timely paid. The rent ledger clearly shows that [appellant's] rent was continually paid late and accepted by [landlord]." After reciting her rent payment history, appellant went on to contend that landlord previously accepted rent outside the ten-day notice period in November 2018, and therefore appellant argued that she should have been permitted to remit her rent payment more than ten days after July 1, thus rendering landlord's July 12, 2019 notice premature.

{¶ 7} Next, appellant argued that the late payments assessed to her by landlord were unconscionable. Under the terms of the lease agreement, landlord was entitled to assess a late fee of $5 if appellant paid her rent by the sixth day of the month, plus an additional $1 per day thereafter. Because appellant's portion of the monthly rent was only $25, appellant argued that a late fee of $1 per day was unconscionable because it exceeded appellant's daily rental rate of between $.81 and $.89. In sum, appellant asserted that she "should be given credit for each month she was charged late fees in excess of the one-time fee of $5.00." According to appellant, her account would actually have a credit of $13.43 after crediting back the late fee charges.

{¶ 8} On October 15, 2019, landlord filed its memorandum in opposition to appellant's objections. In its memorandum, landlord asserted that appellant "has paid her

3.

rent late almost every month that she has lived at Byrneport, but July, 2019 was the first month that she attempted to pay after a 10-day notice had expired. At no point did [landlord] violate its policy * * * of not accepting rent after the 10 day after [sic] has expired." Landlord explained that the lease provides two options when a tenant fails to timely pay rent: either accept the rent and apply a late fee or terminate the lease. According to landlord, "once the 10-day notice is served, the tenant must pay within that 10-day timeframe, otherwise a FED Complaint is filed." In support of its argument, landlord recited the relevant language in the lease, which provides:

> After serv[ice] of the 10-Day Notice tenant's rent will only be accepted if tenant schedules a meeting with the apartment manager to pay the delinquent rent which meeting must take place within 10 days of the date the 10 Day Notice is served on the tenant. Tenant's rent will only be accepted if it is paid in full during this 10 day period.

{¶ 9} Landlord then referenced testimony provided by its compliance manager, Patricia Kennedy, in which she clarified that landlord previously issued appellant a 10-day notice on November 7, 2018, which would have expired on Monday, November 19, 2018. Appellant tendered her rent payment on November 19, 2018, and landlord therefore rejected appellant's contention that it failed to enforce the above-referenced lease provision in November 2018.

{¶ 10} Unlike in November 2018, landlord insisted that in this instance appellant failed to tender her payment within ten days of its service of notice on appellant on

4.

July 12, 2019. Rather, according to testimony from landlord's property manager, Charissa Hunt, appellant did not initiate contact with landlord until she called Hunt on July 23, 2019, 11 days after the ten-day notice was served.

{¶ 11} As to appellant's assertion that landlord's late fees were unconscionable, landlord argued that its fees were based upon those set forth in the Department of Housing and Urban Development ("HUD") handbook with respect to Section 8 apartment complexes, which provides: "Additionally, the owner may charge a fee of $1 per day for each additional day the rent remains unpaid for the month." Because this lease was a standard, HUD-preapproved lease, landlord asserted that the late fees were not unconscionable. Moreover, landlord noted that it was not "seeking to evict [appellant] for not paying late fees, but for not paying her rent for July, 2019."

{¶ 12} On October 24, 2019, appellant filed a motion to strike portions of landlord's memorandum in opposition to her objections, arguing that landlord improperly introduced new evidence in its memorandum by attaching an affidavit from Kennedy, in which Kennedy identified a money order that appellant allegedly used to pay her June 2019 rent, thereby contradicting appellant's hearing testimony that she did not pay June or July rent because she was under the impression that those months had already been prepaid. According to appellant, landlord's introduction of additional evidence following the hearing was improper under Civ.R. 53.

{¶ 13} Upon consideration of the parties' arguments, the trial court issued its decision on appellant's objections to the magistrate's decision on November 8, 2019. In

5.

its decision, the trial court agreed with landlord that its acceptance of appellant's late payments made within the ten-day grace period provided in the lease agreement did not create a course of conduct whereby landlord would waive its right to enforce their eviction policy as to payments made after ten days had elapsed. Regarding appellant's unconscionability argument, the trial court referenced HUD's handbook, determined that this was not a market rate lease but a subsidized lease, and concluded that the $1 late fee was not unconscionable. In sum, the trial court rejected each of appellant's arguments, found appellant's objections not well-taken, and adopted the magistrate's decision. Additionally, the court summarily denied appellant's motion to strike.

{¶ 14} Thereafter, appellant filed a timely notice of appeal.

### B. Assignments of Error

{¶ 15} On appeal, appellant asserts the following assignments of error for our review:

I. The Trial Court Erred by Failing to Consider that the Late Fees were Unconscionable and Unenforceable.

II. The Trial Court Erred by Failing to Consider the [Course] of Conduct Established Between the Parties.

III. The Trial Court Erred by Failing to Strike the Introduction of New Evidence in Plaintiff's Memorandum in Opposition.

6.

## II. Analysis

### A. Unconscionability

{¶ 16} In her first assignment of error, appellant argues that the trial court erred in rejecting her argument that the late fees charged by landlord were unconscionable and thus unenforceable.

{¶ 17} As to appellant's unconscionability argument, R.C. 5321.14 states that:

> (A) If the court as a matter of law finds a rental agreement, or any clause thereof, to have been unconscionable at the time it was made, it may refuse to enforce the rental agreement or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.

> (B) When it is claimed or appears to the court that the rental agreement, or any clause thereof, may be unconscionable, the parties shall be afforded a reasonable opportunity to present evidence as to its setting, purpose, and effect to aid the court in making the determination.

"Whether a particular contract is unconscionable is a question of law subject to de novo review." *Anderson v. Ballard*, 6th Dist. Lucas No. L-10-007, 2010-Ohio-3926, ¶ 27, citing *Taylor Bldg. Corp. of Am. v. Benfield*, 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12, ¶ 35-37.

{¶ 18} In general, unconscionability will be found where "'one party has been misled as to the "basis for the bargain," where a severe imbalance in bargaining power exists, or where specific contractual terms are outrageous.'" *Id.* at ¶ 31, quoting *Deutsche*

7.

*Bank Natl. Trust Co. v. Pervarski*, 4th Dist. Washington No. 08CA52, 2010-Ohio-785, ¶ 31. (Citation omitted.)

{¶ 19} "The unconscionability doctrine consists of two prongs: '(1) substantive unconscionability, i.e., unfair and unreasonable contract terms, and (2) procedural unconscionability, i.e., individualized circumstances surrounding parties to a contract such that no voluntary meeting of the minds was possible.'" *Beneficial Mtg. Co. of Ohio v. Leach*, 10th Dist. Franklin No. 01AP-737, 2002-Ohio-2237, ¶ 57, quoting *Dorsey v. Contemporary Obstetrics & Gynecology, Inc.*, 113 Ohio App.3d 75, 80, 680 N.E.2d 240 (2d Dist.1996).

{¶ 20} In this case, appellant asserts that the late fees set forth in the parties' lease agreement are outrageous. She argues that the fees are procedurally unconscionable because she has no ability to alter the terms of her lease agreement. Further, she argues that the late fees were substantively unconscionable when compared with her rent of $25 per month. In essence, appellant argues that because she only pays $25 per month for rent, a late fee of $1 per day exceeds the daily rental rate and is therefore unconscionable.

{¶ 21} In response, landlord notes that the parties' lease agreement is a form lease approved by HUD and contains provisions that are mandatory under HUD regulations. Appellant does not dispute this fact. Rather, appellant argues that HUD regulations do not preempt state law.

{¶ 22} In support, appellant cites a Vermont Supreme Court case that addressed the same HUD-approved late fee provision that is at issue in this case. *Highgate Assoc.,*

8.

*LTD. V. Merryfield*, 597 A.2d 1280 (Vt.1991). In that case, the court held that the late fee provision was an unreasonable and unenforceable liquidated damage provision.

{¶ 23} While related to this case in the sense that the lease provision was similar to that at issue here, we note that *Merryfield* is factually distinguishable from this case, as the contract principle under which the Vermont Supreme Court examined the lease provision in *Merryfield* pertained to liquidated damages, not unconscionability. *See Oldendick v. Crocker*, 2016-Ohio-5621, 70 N.E.3d 1033 (8th Dist.) (addressing conscionability and liquidated damages issues separately).

{¶ 24} Under Ohio law, it is appellant's burden to establish that the late fee provision in her lease is both procedurally and substantively unconscionable. *Collins v. Click Camera & Video, Inc.*, 86 Ohio App.3d 826, 834, 621 N.E.2d 1294 (2d Dist.1993). Analysis of the substantive conscionability of a lease involves a determination of whether the specific terms of the agreement are commercially reasonable." *Eagle v. Fred Martin Motor Co.*, 157 Ohio App.3d 150, 2004-Ohio-829, 809 N.E.2d 1161, ¶ 31 (9th Dist.), citing *Collins* at 834.

{¶ 25} Courts have not developed a standardized list of factors to apply when examining substantive unconscionability because the determination of commercial reasonableness varies with the content of the contract terms at issue in any given case. *Hedeen v. Autos Direct Online, Inc.*, 2014-Ohio-4200, 19 N.E.3d 957, ¶ 30 (8th Dist.); *Caley v. Glenmoor Country Club, Inc.*, 1 N.E.3d 471, 2013-Ohio-4877, ¶ 42 (5th Dist.). "That said, some of the factors courts have considered when determining substantive

9.

unconscionability are: the fairness of the terms, the charge for the service rendered, the standard in the industry, and the ability to accurately predict the extent of future liability." *Christ Holdings, L.L.C. v. Schleappi*, 2016-Ohio-4664, 67 N.E.3d 47, ¶ 64 (7th Dist.), citing *Hedeen* at ¶ 30.

{¶ 26} In this present case, appellant has not established that landlord's $1 per day late fee was commercially unreasonable. Appellant acknowledges that this late fee is standard across all HUD leases, and thus constitutes the standard in the industry. Appellant contends that the late fee is unfair because it represents more than her share of the pro rata daily rent. This argument ignores the fact that most of her rent is subsidized.[1] When taken as a whole, the daily rent for appellant's residence far exceeds the $1 per day charged to appellant as a late fee.

{¶ 27} Even excluding the HUD-subsidized portion of appellant's rent, the daily per diem rental rate on appellant's lease is between $.80 and $.89 depending upon the month. While this is less than the $1 per day late fee imposed under the lease, the difference is not substantial. In this regard, this case differs from *Anderson v. Ballard*, 6th Dist. Lucas No. L-10-1007, 2010-Ohio-3926, in which we found that a late fee of $55 for rent paid only one day late was unconscionable as to a $400 per month lease.

{¶ 28} In *Anderson*, the late fee was approximately four times the per diem rental rate, whereas here the late fee is generally consistent with the per diem rental rate.

---

[1] The record does not reveal whether landlord receives the subsidized portion of appellant's rent from HUD irrespective of appellant's payment of her rent.

Moreover, appellant is able to avoid incurring late fees by making her payment within five days of the due date, unlike the tenant in *Anderson* who would incur the entire late fee even if the rent was only one day late. *Id*. at ¶ 40.

{¶ 29} Finally, it is clear that appellant could accurately predict the extent of her future liability pursuant to the late fee provision, as she made numerous late payments in the past and the late fee provision was clearly set forth in the lease and explained to appellant. For these reasons, we find that appellant has not met her burden of proving that the late fee provision was substantively unconscionable. Therefore, her conscionability argument must fail as a matter of law.

{¶ 30} Accordingly, appellant's first assignment of error is not well-taken.

### B. Course of Conduct

{¶ 31} In her second assignment of error, appellant argues that the trial court erred in finding that her nonpayment of rent constituted a breach of the lease without taking the parties' course of conduct into consideration.

{¶ 32} We review the trial court's decision following a bench trial under a manifest weight of the evidence standard. *Quest Workforce Solutions, LLC v. Job1USA, Inc.*, 2018-Ohio-3304, 119 N.E.3d 817, ¶ 14 (6th Dist.). When reviewing the manifest weight of the evidence, the appellate court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial

ordered." *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 20, quoting *Tewarson v. Simon*, 141 Ohio App.3d 103, 115, 750 N.E.2d 176 (9th Dist.2001). In so doing, we remain mindful that, in a bench trial, "the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984).

{¶ 33} "The failure of a lessor to object in a timely manner to a breach of a lease agreement constitutes a waiver, estopping the lessor from setting up the breach as a basis for terminating the lease." *Colaprete v. Morris*, 5th Dist. Stark No. 2013CA00031, 2013-Ohio-3899, ¶ 44, citing *Finkbeiner v. Lutz*, 44 Ohio App.2d 223, 226-227, 337 N.E.2d 655 (1st Dist.1975). In *Lutz*, the court held that the lessor waived the right to assert that a late payment breached the lease because the lessor had accepted late payments from the lessee for nine years. The court stated in its syllabus: "Where a course of conduct is engaged in between the parties to a lease, which acts are contrary to specific provisions therein, such conduct will speak for itself, and the parties will be estopped from denying that conduct and its immediate logical consequences." *Lutz* at the syllabus; *see also Habegger v. Paul*, 6th Dist. Wood No. WD-03-038, 2004-Ohio-2215, ¶ 19-20 (landlord waived his right to collect late fees from tenant upon tenant's eviction by continuing to collect tenant's rent payments and not pursuing eviction for 14 months after the first late payment); *Galaxy Dev. v. Quadax, Inc.*, 8th Dist. Cuyahoga No. 76769, 2000 WL 1474502 (Oct. 5, 2000)

12.

(landlord was prohibited from collecting holdover rent because it accepted the original rental payment amount for 17 months after the lease expired).

{¶ 34} In the present case, appellant asserts that landlord should be estopped from rejecting her proffered late payment based upon the prior course of conduct between the parties. At trial, this issue was explored at length.

{¶ 35} According to the terms of the lease and landlord's policies, landlord does not accept rent payments following the expiration of the period set forth in the "10-day Notice of Late Payment of Rent and Termination of Tenancy." Specifically, landlord's "Policy Regarding Late Payment of Rent," which was signed by appellant on September 24, 2018, states, in relevant part:

> 4.) If tenant fails to pay the monthly rent by the 5th day of the month, tenant will thereafter be served with a 10 Day Notice to Vacate Premises and Notice of Termination of Lease for non-payment of rent.

> 5.) After serv[ice] of the 10 Day Notice tenant's rent will only be accepted if tenant schedules a meeting with the apartment manager to pay the delinquent rent which meeting must take place within 10 days of the date the 10 Day Notice is served on the tenant. Tenant's rent will only be accepted if it is paid in full during this 10 day period.

> 6.) If tenant's rent is not paid within the 10 day period, it will not be accepted, and an eviction action will be filed against tenant.

{¶ 36} Our comprehensive review of the record reveals that landlord strictly adhered to this policy in its dealings with appellant. While it is true that landlord accepted late rent payments from appellant on a routine basis, the testimony adduced at trial establishes such acceptance was pursuant to paragraphs 4 and 5 of the foregoing policy. The record further establishes that landlord never accepted late payments from appellant after the ten-day notice period elapsed as set forth in paragraph 6 of the policy.

{¶ 37} The facts of this case are analogous to the facts in *Schroeder Co. v. Coates*, 172 Ohio App.3d 254, 2007-Ohio-2956, 874 N.E.2d 832 (6th Dist.), where we distinguished between late rent payments that were offered and accepted within the ten-day period set forth in a notice sent to the tenant, and rent payments that were rejected by the landlord because they were offered after the expiration of the ten-day period. We held that the landlord's acceptance of rent payments made within the ten-day period does not waive the landlord's right to demand timely rent payments, and thus the landlord was permitted to evict the tenant for failure to pay rent within the ten-day period.

{¶ 38} Construing the facts of this case in light of our holding in *Coates*, we find that landlord is not estopped from enforcing its policy with respect to non-payment of rent. By extension, we find that appellant's failure to pay her rent within the ten-day notice period constituted a breach of the parties' lease agreement, and the trial court's decision in that regard is not against the manifest weight of the evidence.

{¶ 39} Accordingly, appellant's second assignment of error is not well-taken.

14.

## C. New Evidence

{¶ 40} In her third assignment of error, appellant argues that the trial court erred by failing to strike the introduction of additional evidence in landlord's memorandum in opposition to her objections to the magistrate's decision.

{¶ 41} Appellant's argument in her motion to strike was founded upon Civ.R. 53(D)(4)(d), which provides, in relevant part:

> Action on Objections.  If one or more objections to a magistrate's decision are timely filed, the court shall rule on those objections.  In ruling on objections, the court shall undertake an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law.  Before so ruling, the court may hear additional evidence but may refuse to do so unless the objecting party demonstrates that the party could not, with reasonable diligence, have produced that evidence for consideration by the magistrate.

A trial court's decision regarding whether it will consider additional evidence under Civ.R. 53(D)(4)(d) is reviewed under an abuse of discretion.  *Losey v. Diersing*, 12th Dist. Clermont No. CA2012-06-048, 2013-Ohio-1108, ¶ 12.

{¶ 42} Here, appellant argues that the trial court erred in accepting landlord's additional evidence, because "the evidence offered could have been produced for consideration by the magistrate."  Looking at the language of Civ.R. 53(D)(4)(d), we note that the trial court is not *required* to find that the party submitting additional evidence

could not have produced that evidence for consideration by the magistrate. Rather, the language is permissive ("may" instead of "shall"). There is nothing explicit in the rule that limits the discretion of the trial court when it decides to consider additional evidence. Furthermore, the trial court took appellant's objection to landlord's additional evidence into consideration prior to issuing its decision, as the motion to strike containing said objection was pending at the time. For these reasons, we find no abuse of discretion in the trial court's denial of appellant's motion to strike.

{¶ 43} Furthermore, we note that any potential error attributable to the trial court's denial of the motion to strike was harmless, as it is clear from our review that the additional evidence submitted by landlord had no bearing on the trial court's decision to deny appellant's objections to the magistrate's decision.

{¶ 44} Accordingly, we find appellant's third assignment of error not well-taken.

### III. Conclusion

{¶ 45} In light of the foregoing, the judgment of the Toledo Municipal Court, Housing Division, is hereby affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.

_____
JUDGE

Thomas J. Osowik, J.

_____
JUDGE

Gene A. Zmuda, P.J.
CONCUR.

_____
JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.